## F. E. WILSON ET AL. V. EMMA J. SIMPSON ET AL.

### No. 6614.

1. **Ancient Instrument.**—If the instrument is thirty years old, free from suspicion, comes from the proper custody, and has been in some manner acted upon, the requirements are fulfilled which make it admissible as an ancient instrument.

2. **Same.**—See facts *held* sufficient to authorize the admission of a paper as an ancient instrument.

3. **Certificate of Clerk to Registration of Deed.**—The instrument in this case was recorded March 10, 1838. The law of 1836 then in force did not require, as later laws on this subject seem to do, that the certificate of the recorder to the registration of deed should be authenticated by his official seal. Waters v. Spofford, 58 Texas, 121.

4. **Declarations in Disparagement of Title.**—Declarations made by a former owner of land when in his possession are admissible against his subsequent grantee. See example.

5. **Charge—Preponderance of Evidence.**—There was some testimony to the fact that Harris paid a valuable consideration upon the contract. There was none against it. *Held*, that the court could have treated the issue as not disputed, and for stronger reason could submit it to the jury to be acted upon and found upon the preponderance in the evidence.

6. **Stale Demand—Resulting Trust.**—Payne sold two-thirds of his headright certificate to Harris, executing an obligation for title. Subsequently the certificate issued and land located and patented under it in name of Payne. It being shown that

Harris paid Payne for the certificate, the issuance of the patent conveyed the mere legal title to Payne in·trust for Harris or his heirs.    The trust relation continued until some act of repudiation of it brought to the knowledge of Harris or his heirs.

7.    Same—Coverture.—To the plea of stale demand the plaintiffs pleaded coverture. It was shown that the heirs of Payne had first asserted title adverse to the Harris heirs subsequent to the marriage of the plaintiffs.    *Held*, that the coverture avoided the plea of stale demand.

8.    Constructive Trust.—In cases of constructive trusts which presuppose an adverse right from the beginning, limitation will run from the time the beneficiary should have discovered his right of action.

9.    Certificate of Privy Acknowledgment by Married Woman.—A certificate of acknowledgment by a married woman approved as sufficient.    It is as follows:  "And the said  Emma J. Simpson, after being examined by me privily and apart from her said husband, and having said instrument fully explained to her, she acknowledged it to be her own free act and deed, and that she did not wish to retract it."    Duly certified.    This was a substantial compliance with the statute.    Belcher v. Weaver, 46 Texas, 294.

APPEAL from Comanche.    Tried below before Hon. T. H. Connor. The opinion states the case.

*N. R. Lindsey* and *J. R. Fleming*, for appellants.—1.  An ancient instrument of writing, to be admissible in evidence as such, must appear by proof to be at least thirty years old, must be free from suspicion, come from the proper custody, and there must be some evidence that it has been acted on in some way so as to furnish some corroborative proof of its genuineness.    Stroud v. Springfield, 28 Texas, 649; Greenl. on Ev., secs. 141–144.

2.    The certificate of a deputy county clerk, not under his seal of office, that an instrument is of record in a certain county furnishes no proof of that fact and is not admissible in evidence for any purpose, and the indorsement on the deed from William H. Harris to Epps D. Payne, which purported to be by the deputy county clerk of Sabine County, not being under seal of his office, furnished no proof that said deed had ever been recorded in Sabine County.    Rev. Stats., art. 4299; Hart. Dig., art. 291.

3.    If the evidence had been sufficient to establish the payment of a consideration by Harris to Payne for the land certificate and there had been countervailing evidence the charge would have been correct, but when the issue was as to sufficiency of the evidence to establish that fact, without countervailing proof, the charge was then misleading and was error.

4.    If the title bond from Epps D. Payne to William H. Harris, which is the foundation of this suit, was executed upon a valuable consideration paid by said Harris to said Payne; if when the certificate issued to Payne or when the patent issued to Payne or his heirs the legal effect of the transaction was to vest in Payne at the time the certificate issued,

or in Payne or his heirs at the time the patent issued, the legal title to said certificate and to the land located under it in trust for the Harris heirs, the trust was an implied or resulting trust as contradistinguished from an express trust, and limitation and stale demand would run against such trust, and the charge of the court to the contrary was error. Rev. Stats., art. 3209; Kennedy v. Baker, 59 Texas, 150; Carlisle v. Hart, 27 Texas, 352; Tinnen v. Mebane, 10 Texas, 252; De Cordova v. Smith, 9 Texas, 129; Phillips v. Holman, 26 Texas, 277; Hunter v. Hubbard, 26 Texas, 548; Beckford v. Wade, 17 Vesey, pp. 93–98; 7 Wait's Acts. and Def., pp. 229, 269; Beaubien v. Beaubien, 23 How., 190; Ang. on Lim., secs. 166, 178, 468–471; Kane v. Bloodgood, 7 Johns. Chan. Rep., p. 123.

5. If the purchase money was paid by William H. Harris to Epps D. Payne for the two-thirds of his headright land certificate and the legal title to said certificate afterward vested in Payne, and the patent issued to Payne or his heirs to the land located under said certificate, the trust created by the transaction was an implied or resulting trust, and no demand by the *cestui que trust* or beneficiary, or open repudiation of the trust by the constructive trustee or holder of the legal title was necessary to put in operation the statutes of limitation or the doctrine of stale demand and the same would operate from the accrual of the cause of action. McFaddin v. Williams, 58 Texas, 625; Wilson v. Simpson, 68 Texas, 306; McKin v. Williams, 48 Texas, 89; Dull v. Blum, 68 Texas, 299; Glasscock v. Nelson, 26 Texas, 152; Wingate v. Wingate, 11 Texas, 430; Grumbles v. Grumbles, 17 Texas, 477, 478; Hill on Trust., 264, note 2; Ang. on Lim., sec. 471; Boone v. Childs, 10 Pet., 223.

6. The title bond from Epps D. Payne to William H. Harris was not a conveyance of anything, nor was it an obligation to convey land at any event, but was intended as an obligation to bind Payne to procure at his own expense the certificate, and then to make a conveyance of the certificate to Harris.

7. The cause of action in this case accrued to Wm. H. Harris against Epps D. Payne on the 2d day of February, 1838, the date of the issuance of the certificate to Payne, and from that time limitation would run and laches be imputable to Harris and his heirs. Wilson v. Simpson, 68 Texas, 306; McKin v. Williams, 48 Texas, 89; Carlisle v. Hart, 27 Texas, 350; Brown v. Guthrie, 27 Texas, 611; Hanks v. Enloe, 33 Texas, 624; Smith v. Hampton, 13 Texas, 459; Mitchell v. Shappard, 13 Texas, 484; Dugan v. Colville, 8 Texas, 127; Ang. on Lim., 464.

8. If the plea of coverture is sufficient to avoid the plea of stale demand it can not avail the plaintiffs in this case, because they were minors when the cause of action accrued and can not tack the disability of coverture to that of infancy. White v. Latimer, 12 Texas, 61; Ford v. Clements, 13 Texas, 592; French v. Strumberg, 52 Texas, 92.

9.   The sale from Epps D. Payne to Harris,. evidenced by the bond for title, was of two-thirds of Payne's headright certificate, and when the certificate issued to Payne in February, 1838, plaintiffs' cause of action accrued.   That was in the lifetime of Harris, and from that time stale demand and laches was applicable to the case.   Wilson v. Simpson, 68 Texas, 306; Walet v. Haskins, 68 Texas, 420; De Cordova v. Smith, 9 Texas, 121; Glasscock v. Nelson, 26 Texas, 152.

*Word & ` Charlton* and *T. L. Hutchison*, for appellees, cited:  Hemming v. Zimmerschitte, 4 Texas, 159; Holman v. Criswell, 15 Texas, 399; Early v. Sterrett, 18 Texas, 117; Yeary v. Cummins, 28 Texas, 91; Cole v. Noble, 63 Texas, 433; Rucker v. Daily, 66 Texas, 287; Robertson v. Du Bose, 76 Texas, 10; Rev. Stats., arts. 3201, 3209, 3222; 3 Wait's Ac. and Def., 473, at bottom of page; Collins v. McCarty, 68 Texas, 150; Reed v. West, 47 Texas, 240; Merrill v. Roberts, 64 Texas, 441; Smith v. Elliott & Deats, 39 Texas, 208; McKelvain v. Allen, 58 Texas, 387; Porterfield v. Taylor, 60 Texas, 265; Lundy v. Pierson and Wife, 67 Texas, 233.

HOBBY, PRESIDING JUDGE.—This is an action of trespass to try title brought on June 4, 1884, by the appellees and others against the appellants to recover a part of the Epps D. Payne two-thirds of a league and labor of land.   A trial at the February term, 1886, of the District Court of Comanche County resulted in a judgment in favor of Mrs. Emma Simpson and Mrs. Hardeman, which was reversed by the Supreme Court in May, 1887.   In August, 1887, the appellees, Mrs. Emma Simpson, Mrs. M. Hardeman, and Mrs. Fannie Smith, each joined by her husband, filed amended pleadings claiming an undivided interest in the land, aggregating two thousand two hundred and forty and two-third acres.

The appellees, who were plaintiffs below, claim as the heirs of Wm. H. Harris under a bond for title executed by Epps D. Payne to said Harris on October 3, 1837, binding the obligor and his heirs, etc., in the sum of $5000, to "make or cause to be made to said Harris or his heirs a good title to the remaining part of his headright of land to which he was entitled as a head of a family, etc., namely, two-thirds of a league and labor of land; all expenses on same to be paid by said Payne or his deputy or agent so soon as I myself can obtain one from the government.   Now if the above bound Epps D. Payne shall well and truly perform, fulfill, and accomplish to the said Wm. H. Harris the titles as above mentioned, then this bond to be," etc.   Such is the language of the contract which is the foundation of this suit.

The appellants, who claim under a conveyance from the heirs of Payne, pleaded not guilty, the statutes of three, five, and ten years limitation, laches, stale demand, improvements in good faith, etc.

There was a supplemental petition filed by appellees replying to the defense of laches and stale demand, the substance of which was that such defense was inapplicable to and ought not to prevail against plaintiffs; because they were under coverture, and defendants had always recognized their title until after their marriage. And that they had no knowledge of any adverse claims, etc., by defendants until 1875, etc.

A trial by a jury at the February term, 1888, between Mrs. Emma Simpson, Mrs. Martha Hardeman, and Mrs. Fannie Smith, plaintiffs, and the defendants F. E. Wilson, J. A. Wright, Wm. Pendergrass, T. S. Langston, A. G. Parker, J. C. Ross, and W. D. Cox, resulted in a verdict and judgment for the plaintiffs for an undivided interest in the land, aggregating nine hundred and ninety-three and seven-ninths acres.

From this judgment the defendants appeal.

The first assignment is that "the court erred in admitting in evidence as an ancient instrument, over defendants' objections, as shown by bill of exceptions, the deed from Wm. H. Harris to Epps D. Payne, dated October 8, 1837."

We do not think that the court erred, as is contended by appellants, in admitting this deed in evidence. It was admitted as an ancient instrument. The rules as to the admissibility of this character of testimony have been so repeatedly stated by the Supreme Court and are so familiar that a general reference to them merely would seem to be sufficient for the disposition of the assignment raising this question.

If the instrument is thirty years old, free from suspicion, comes from the proper custody, and has been in some manner acted on, the requirements are fulfilled which make it admissible as an ancient instrument. Applying these rules to the deed under consideration we find it dated October 8, 1837. It was therefore at the time of the trial, in 1886, about forty-nine years old. It was found among the papers of one of the heirs of the grantee, John Pye, who had married a daughter of Epps Payne.

J. A. Wall, a witness, testified that the deed had been left with him by J. P. Payne, a son of the grantee, in 1885, to dispose of it to the Harris heirs. This was not done, and he returned it to Payne. It appears from Payne's evidence that it was deposited at one time with his attorneys at San Augustine, Texas, for safe keeping. It was obtained from them a short time before the trial of this cause.

There are many facts and circumstances showing that it had been acted on. Epps D. Payne, the grantee, and his family lived on the land described in this conveyance. He occupied it until his death in 1840. His wife remained on the land after his death until she executed a contract for the sale thereof, which had been made by him during his lifetime.

This instrument was acknowledged before Walter Hinckley, deputy county clerk. The courthouse of Sabine County was shown to have been destroyed by fire about ten years prior to this trial. The following indorsement appears on the deed:

"Filed for record in the county of Sabine March 3, 1838.
[Signed]  ·"WALTER HINCKLEY,<br>"Deputy County Clerk and Recorder."

And is again indorsed:

"Recorded in said county, at office, in the town of Milam, Book B, pages 69 and 70. [Signed]  "WALTER HINCKLEY,
"Deputy County Clerk and Recorder."

It is shown by the certificate of acknowledgment, which was made on the same day, of Hinckley, the clerk, that no official seal had been at that time procured.

The ground of objection to the indorsement of the clerk showing that the deed was filed for record and recorded in March, 1838, in Sabine County, is that it is not authenticated by that officer's official seal. In support of this objection we are referred to the following provision of the law: "Every such instrument of writing," referring to deeds, conveyances, etc., "shall be considered as recorded from the time it was deposited, etc., and the recorder shall certify under his hand and seal of office, the hour, day, and month, etc., when he recorded it, and the book and page," etc.

This is the fourteenth section of the Act of May 12, 1846. Pasch. Dig., 5014; Sayles' Civ. Stats., vol. 2, art. 1716; Rev. Stats., 4299. The second section of this act (Pasch. Dig., 5002), provided in substance that the seal of the County Court should constitute the recorder's seal, and that it should be used in the authentication of his official acts.

The instrument in this case was recorded on March 10, 1838, and the law of 1836, which regulated then the registration of such conveyances, is the law applicable to this deed in so far as it is affected by this question. That law did not require, as later laws on this subject seem to do, that this certificate of the recorder should be authenticated by his official seal. Waters v. Spofford, 58 Texas, 121.

We do not think, therefore, that the objection to the certificate or indorsement of the clerk in this case, based upon the ground that it was not authenticated by his official seal, is tenable.

The admission in evidence of the declarations of John Payne, over defendants' objections, is assigned as error, because it does not appear that such declarations were made before he parted with his title to the land. These declarations or admissions were, as the evidence discloses, made by him to J. B. Harris and A. L. Simpson. They appear to have

been made on at least two different occasions. One of these is stated indefinitely to have been in 1873, but the witness John R. Smith fixes one as having been in May, 1873.

The power of attorney executed by Payne and the other heirs, under which the conveyance was made, is dated in October, 1873. The deed which passed Payne's title to appellants is dated November 12, 1873.

The declarations of John Payne in disparagement of appellants' title would have been clearly inadmissible under well recognized rules if they had been made after the title had passed from him. But whatever uncertainty may arise as to the time when they were made, if we are confined to the testimony of the witnesses locating it in 1873, there can be no doubt, looking to the testimony of the witness Smith, that the declarations were made about six months before any conveyance was executed by him to appellants, and for that reason were correctly admitted by the court, and the assignment is therefore not well taken.

The court instructed the jury what would constitute a valuable consideration, and informed them that the burden of proving the fact of its payment by Harris to Epps Payne for the land was upon the appellees, and if this was not established to the reasonable satisfaction of the jury by a "preponderance of the evidence," the defendants (appellants) would be entitled to a verdict on this issue.

This is assigned as error, because "there being some evidence on the part of plaintiffs tending to show a consideration, and none introduced by defendants to the contrary, the charge misled the jury by authorizing them to act on a preponderance of evidence."

The contention of appellants is that "if the evidence had been sufficient to establish the payment of a valuable consideration by Harris to Payne for the land certificate and land, and there had been countervailing evidence, the charge would have been correct; but when the issue was as to the sufficiency of the evidence to establish that fact, without countervailing proof, the charge was misleading," etc.

Whatever evidence there was tending to establish the payment of a valuable consideration by Harris, and that there was some is conceded by appellants' assignment, seems to have been sufficient to prove that fact, as the verdict of the jury was in effect in favor of appellees on that issue. If there was "some evidence to establish the fact of the payment of a valuable consideration by William H. Harris to Payne, and none introduced by the defendants to the contrary," as stated by appellants in their third assignment, the charge might have recognized it as an undisputed issue; and if the court would have been authorized to treat it as an issue thus established the appellants have no cause to complain of the charge. It may be proper to say in this connection that there was sufficient proof of payment of a valuable consideration to sustain the finding of the jury. Besides the deed from Harris to Payne conveying a tract of land to the former on the same day the

bond for title was executed, John Payne, one of the heirs of Epps Payne, it was shown, stated that his father had been paid for the certificate, and the witness McRae testified that the land conveyed by Harris to Epps Payne was occupied by the latter during his lifetime and by his widow subsequently, up to 1872; and that she executed a contract for the sale of the land entered into by Payne in his lifetime.

The questions raised by the assignments of error from the fourth to the tenth inclusive may be considered together. These questions involve the proper construction of the contract or bond for title, which is the foundation of this action, and the rights of the parties thereunder, and the extent these rights are affected under the facts of this case by the law of stale demand or limitation. These questions were discussed upon a former appeal. 67 Texas, 306. The assignments presenting these questions relate to the general charge of the court and to the special instructions requested by appellants and refused by the court.

The court instructed the jury that the legal effect of the certificate No. 162, issued to Epps D. Payne by the board of land commissioners of Sabine County, in February, 1838, and the survey thereunder in May, 1851, in Comanche County, Texas, as also the patent to the land surveyed dated June 11, 1852, was to vest in said Payne or his heirs on June 11, 1882, the legal title to said survey of two-thirds of a league of land, the equitable title then being in Wm. H. Harris or his heirs, by virtue of the bond for title, if the latter was executed for a valuable consideration, as before explained; and that in such case the legal title thereafter vested in the heirs of said Epps D. Payne in trust for said Harris' heirs. In other words, if Harris paid for the land, then when it was located and patented to Payne's heirs they held it for the benefit of Harris' heirs; and on demand by the latter for final or complete title, it was the duty of the Payne heirs to make such title. But until such demand and a refusal by the Payne heirs, or some act done by those to whom the patent issued indicating an intention on their part to repudiate the trust created by the payment of the purchase money, and to claim the land for themselves, the operation of the law of stale demand would not apply.

The court also instructed the jury in effect that "if they found that Wm. H. Harris had paid Payne a valuable consideration for the bond for title as explained, and that the certificate issued in February, 1838, and that neither Epps Payne, during his lifetime, nor his heirs or legal representatives made any claim to the certificate or the land located under it, and did no act brought home to the Harris heirs that would indicate an intention on their part to repudiate the trust the payment of the purchase money created and claim the land for themselves, but recognized and acknowledged, on the contrary, the same as owned by said Harris or his heirs up to the time of the marriage of plaintiffs, then limitation would not run against them, and no repudiation of said

trust after their marriage would put in operation as against them the law of stale demand.''

It is urged by appellants that the legal effect of the contract mentioned in the charge of the court was to vest in Payne at the time the certificate issued, or to his heirs when the patent issued, the legal title to the certificate and to the land located under it in trust for the Harris heirs, which trust was an implied or resulting trust as contradistinguished from an express trust, and stale demand would run against it, and the charge was error; and no demand was necessary by the beneficiary or open repudiation by the trustees to put in operation the law of stale demand, but that stale demand would operate from the accrual of the cause of action, which was the date of the issuance of the certificate, February 2, 1838.

The entire charge of the court on this branch of the case is believed to be in harmony with the construction given contracts of the class under discussion. Where such contract has been executed by the obligee and the legal title to the land is vested in the obligor, the latter holds it in trust for the former, and limitation does not begin to run against the obligee's right of action while this relation exists and is recognized by the vendor and his heirs. There must be some act of the latter indicative of his intention to refuse performance or to claim the land. This manifestation of a hostile purpose must be by some act of adverse possession or claim in his own right. Robertson v. Du Bose, 76 Texas, 10; Rucker v. Daly, 66 Texas, 284; Cole v. Noble, 63 Texas, 434; Reed v. West, 47 Texas, 240; Yeary v. Cummings, 29 Texas, 91.

''In cases of resulting trusts where the trust is admitted and there is no adverse holding, no lapse of time affects the beneficiary. In constructive trusts which presuppose an adverse right from the beginning in the trustee, limitation will run from the time the beneficiary should have vindicated his right of action. But in such case the trustee must bring himself within the position of a continued, consistent, adverse claimant, and the beneficiary must have no reasonable excuse for failing to prosecute his claim.'' Cole v. Noble, 63 Texas, 434; Yeary v. Cummins, 28 Texas, 91; Rucker v. Daily, 66 Texas, 284; Robertson v. Du Bose, 76 Texas, 10.

The proof in this case appears to be satisfactory, and is not contradicted, to the effect that Epps Payne during his lifetime recognized the title of Harris. The testimony of the witness John H. McRae shows that he was intimately acquainted with both Payne and Harris in 1837 and 1838. He was a member of the board of land commissioners of Sabine County issuing the certificate; was related to Payne; had heard him frequently speak, in 1837 and 1838, of having sold the certificate to Harris and the latter of having bought it. Harris died in 1839. Payne lived on the land in Sabine County over which Harris had exer-

cised ownership until he conveyed it to Payne October 8, 1837, and died on it in 1840. Mrs. Payne knew that Harris' heirs claimed the certificate and land. He had never heard her claim it, although she lived on the land Harris conveyed to Payne until 1872. The bond for title was recorded by the Harris heirs or their guardian Wm. Clark in Comanche County in 1861, and Clark and said heirs paid taxes on it. No taxes were ever paid on it by the Payne heirs.

There was evidence to the effect that John Payne, one of the heirs, stated that he knew that his father had been paid for the certificate by Harris; that his mother had always told him that it belonged to the Harris heirs. He expressed his willingness in 1873 to Simpson and J. B. Harris, heirs of Harris, to make a deed, and that there would be no trouble about it. He thought that they had a deed. He did not make a conveyance, however, to them. The foregoing facts were testified to at length by witnesses for appellees. There is no evidence in the record showing that any claim was set up to the land by the Payne heirs, or indicating that the claim or title of the Harris heirs was disputed by the former until November 2, 1873.

It was agreed in the court below that Mrs. Fannie Smith was married in 1851, Mrs. Emma Simpson in March, 1860, and Mrs. Theodosia Hardeman in 1867. So that it is evident that on November 12, 1873, which is the date of the first act of repudiation of the title of appellees, the statute of limitation was not put in motion against them.

It is manifest from the foregoing facts, and the jury so found, that there was such a recognition of appellees' title up to November 12, 1873, that the doctrine of stale demand did not operate to defeat during that time their recovery; and that from that date to the institution of this suit, in 1884, no limitation or lapse of time operated against the plaintiffs, because they were then and have been since married women.

Appellants, who were defendants below, introduced in evidence, over plaintiffs' objections, a deed executed by Mrs. Simpson and her husband to John P. Davidson and R. H. Irion, conveying to them a portion of all the land in controversy. It was shown by the evidence to have been the separate property of Mrs. Simpson. The purpose of the defendant in introducing the deed was to reduce the amount of Mrs. Simpson's recovery in this suit. The effect of it under the charge of the court was to reduce her recovery three hundred and seventy-nine and one-third acres. The objection to the deed was that the certificate of acknowledgment failed to show that the deed was willingly signed as required by the statute.

" That part of the certificate dated January 26, 1877, necessary to be referred to recited her appearance and privy examination by the officer apart from her husband, and the explanation in full of said instrument, and that "she acknowledged it to be her own free act and deed, and that she wished not to retract it."

Under the authority of Belcher v. Weaver, 46 Texas, 294, and looking to the whole certificate, although it is not a literal compliance with the law, a reasonable construction of its language would, under the rules laid down in the case cited, authorize the conclusion that it is a sufficient compliance with the statute, and that the cross-assignment is not therefore well taken.

We do not think there is any error in the judgment, and we think it ought to be affirmed.

*Affirmed.*

Adopted March 17, 1891.