## PRUETT v. WICHITA FALLS & S. R. CO.

No. 13596.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 24, 1937.

Rehearing Denied Oct. 22, 1937.

J. W. Chancellor, of Bowie, and Harris & Martin, of Wichita Falls, for appellant.

Bullington, Humphrey & King, of Wichita Falls, for appellee.

SPEER, Justice.

This suit was instituted in the district court of Wichita county, Tex., by H. C. Pruett against the Wichita Falls & Southern Railroad Company by petition filed July 30, 1935, and by an amended petition filed October 18, 1935, Wichita Falls & Southern Railroad Company and Wichita Falls, Ranger & Fort Worth Railroad Company were made defendants. The action was for damages for personal injuries sustained by plaintiff during the month of November, 1931, while working on engine 207 in the shops and roundhouse of defendants.

The petition, in effect, charges that the three named defendants are one and the same. That they have the same officers, a common shop and roundhouse for making repairs on rolling stock; that by their combined efforts they operate a comparatively short line of railway in Texas, all under one supervision and control; that, in the matters affecting plaintiff's rights involved in this suit, they were acting together; that they were joint tort-feasors.

Allegation is made that plaintiff had been an employee of defendants in their shops and roundhouse for several years, working under certain foremen from time to time, performing such duties as were pointed out to him by his foreman in charge of the work to be done; that engine 207 was brought into the shop some time during November, 1931, with a cylinder head blown off and defendants' foreman, charged with the duty of making such repairs, instructed plaintiff to assist in the work; that the cylinder head had been previously bolted on with studs, a type of bolt which passed through the head and screwed into the wall of the cylinder; that when the head came off the studs or bolts broke off approximately even with the end of the wall, leaving the threaded part in the wall; that it was necessary to remove the broken studs; that instead of drilling them out the defendants negligently undertook to have a projection welded onto the broken studs and to thereafter attempt to remove them by means of wrenches, that is, to unscrew or twist them out; that an extension had been placed on the wrench to enhance its efficiency; that plaintiff, while in the discharge of his duties and under direction of his foreman, was lifting upward on the wrench handle, and while exerting his entire strength thereon, the stud broke at the point where it was welded, causing plaintiff to receive a sudden jerk and jar to his entire body, resulting in severe injuries to his back, hip joints, and many other vital parts of his physical structure, all of which are alleged in specific detail.

The petition sets out the intense pain and suffering endured by plaintiff from the date of the injury until the date of the trial; that plaintiff will never recover from the injuries, and will never be able to do manual labor again; that every effort to work has constantly been accompanied by pain and suffering; and that after each effort on the part of plaintiff to labor he has been compelled to go to bed and call the assistance of a physician before he can again leave his bed.

Allegation is made that defendants kept posted, on a bulletin board at their shops, a printed notice to employees that, "Anyone desiring the services of a Company Doctor will first call Dr. R. C. Smith." That plaintiff called Dr. Smith, who examined him and treated him by placing bandages on his back and otherwise; that Dr. R. C. Smith continued to treat him until in October, 1933, but that Dr. Smith at all times told plaintiff he was not materially injured; that Dr. Smith fraudulently concealed and withheld from plaintiff the nature and extent of his injuries, with a view to aiding the defendants by inducing plaintiff to not claim damages against defendants by suit or otherwise.

Further allegations are to the effect that in October, 1933, plaintiff, upon his own initiative, consulted Drs. P. K. Smith and Wilcox at Clinic Hospital, when X-rays were made and he was advised he had an injured joint in his back; that plaintiff had at all times since the date of his injuries and until in October, 1933, reposed the utmost confidence in the skill and integrity of Dr. R. C. Smith and but for such confidence he would have consulted another physician.

The petition contains this allegation: "On and after October 24, 1933, the said Dr. P. K. Smith and Dr. Wilcox truthfully advised this plaintiff of the nature and extent of his said injuries, which information was the first information which this plaintiff had that said Dr. R. G. (C) Smith had misled and deceived this plaintiff."

In another paragraph he alleged: "Plaintiff says that he only learned after October, 1933, after an examination by Drs. P. K. Smith and Wilcox and Parnell that he was permanently injured and would never recover."

Allegations were made as to the age of plaintiff, his life expectancy, his earning capacity, his losses to the date of trial and those in the future, and prayed for judgment in the sum of $74,407.60.

The defendants filed separate answers consisting of general denials, and specially that plaintiff's cause of action, if any he ever had, was barred by the statutes of two years' limitation; that Dr. R. C. Smith was guilty of no fraud as against the plaintiff in concealing from plaintiff such cause of action he may have had.

The defendants further specially pleaded that they were railway corporations operating under certain contracts and agreements authorized by the Legislature of this state, engaged in both intra and interstate commerce, and that these conditions existed during November, 1931. That engine No. 207, upon which plaintiff claims to have been working when injured, was one then in use by defendants for the transportation of interstate commerce, and, because thereof, such claim as plaintiff had, if any, could only be made and prosecuted by him under and by virtue of the Federal Employer's Liability Act, 45 U.S.C.A. §§ 51–59; that by the provisions of that act the time was long since passed in which plaintiff could maintain this suit.

A jury trial was requested, and the testimony was offered under the rulings of the court. When all parties had finished the introduction of testimony, at the request of defendants, the court peremptorily instructed the jury to return a verdict for them; this being done, the court entered judgment that plaintiff take nothing as against the defendants, and that the latter go hence with their costs. From these actions by the trial court, the plaintiff has perfected and is prosecuting this appeal.

The only issue for determination here is whether or not the trial court should have given the peremptory instruction. It is undisputed that nearly four years elapsed between the time plaintiff claimed to have been injured in November, 1931, and the dates on which he filed his original petition against one of the defendants on July 30, 1935, and the amended petition interpleading the two other defendants filed on October 18, 1935. The plaintiff explained his delay in filing suit so as to avoid the effect of a general demurrer, which he had reason to believe would be urged by the defendants. As we have seen by the statement of his pleadings given above, he contended that Dr. R. C. Smith, the chief surgeon of defendants, had fraudulently withheld from plaintiff his true condition and the "nature and extent" of his injuries; that he had the utmost confidence in the skill and integrity of the physician and believed what Dr. Smith had said; relying upon these statements and the diagnosis of Dr. Smith he had not instituted the suit before the dates shown. That during the early part of October, 1933 (before the expiration of two years after he received the injury), he lost confidence in Dr. R. C. Smith and consulted Dr. P. K. Smith and others. That his new physicians took X-ray pictures on October 6 and 24, 1933, and advised him he had a fractured or dislocated vertebra and a dislocated hip joint; that he was in a serious condition and would never be well again. The legal effect of plaintiff's contention is that this was when he first learned he had a cause of action, and that he filed his suit within two years from that time, and was therefore not barred by limitation. Under the facts disclosed we cannot agree with this contention.

■ The court having given a peremptory instruction against plaintiff we must consider the testimony in its most favorable light to plaintiff's theory. To combine questions and answers and paraphrase detailed statements found in plaintiff's testimony, the substance of it is as follows:

"I received an injury during November, 1931, while assisting in the removal of studs and bolts from a broken cylinder head on engine No. 207 in defendants' shops. The foreman of the work had instructed me to perform this labor. I was lifting on a bar attached to a wrench when the bolt broke causing me to suddenly jerk my entire body upward and the pain in my back felt as though I had been stuck with an ice pick. I walked to a nearby engine and lay down in the cab; I went home and called Dr. R. C. Smith; he was the company doctor; they had held out of my salary each month an amount to be used for medical services, and by calling Dr. Smith I would not have to pay him; there was at that time posted

in the shops a bulletin telling employees if they wanted a company physician, call Dr. Smith; he gave me a hypodermic, placed a plaster on my back and left some tablets which he said was morphine; I rested for an hour or so and when I waked up I was suffering intensely and continued to suffer until I passed out; my pains were low down in my back and in my hips. Some of my suffering ceased after so long but I have suffered ever since I received the injury. I have suffered more at times than at others; sometimes it continued until I fainted, this happened several times. I have very little education and cannot earn money except by manual labor. Shortly after I was hurt I told Dr. Smith my back was out of place, he said if it was or I had a broken joint I would be paralyzed; he gave me some medicine in a bottle. He never did tell me anything about how long my injury would last. He said if I would take that medicine I would get all right. Dr. R. C. Smith continued to treat me for nearly two years; he told me I had Neuritis and would have to have my teeth taken out; I had my teeth removed about September, 1933; I believed all Dr. Smith told me; I relied implicitly in him, I thought he was a good doctor and that he was honest; Dr. R. C. Smith had been called to attend members of my family occasionally since 1926. I lost confidence in Dr. R. C. Smith about October, 1933, and of my own volition consulted Dr. P. K. Smith; he made X-ray pictures on October 6 and 24, 1933; he said I had a hip joint broken; that if he could operate on me he could get me to where I would not suffer so much; he said he would have to graft a bone on my back; he advised me to go to Mr. Bassett (the vice-president and general manager of the companies) and tell him I was seriously injured and never would be well; I did this and Mr. Bassett told me to go back to Dr. R. C. Smith and let him treat me for thirty days and if I did not improve he would see that I got the operation and compensation; I went back to Dr. R. C. Smith for four months, and it was during this time that Dr. R. C. Smith told me I had Neuritis; he did me no good and I quit going there."

On cross-examination the plaintiff repeated substantially what he had said on direct, except that some of the dates mentioned were confused, especially the time when Dr. R. C. Smith told him he was suffering from neuritis, but in veiw of the disposition made by the court of the case we deem them immaterial. The plaintiff was caused to emphasize the fact that he knew he was injured in November, 1931, while attempting to remove the stud from the cylinder wall; that he knew at all times since then he had received an injury and that he had not been free of pain, except while under the influence of medicine since that time, and that he had never suffered any pain in that region a minute in his life before receiving the injury.

We have carefully searched the record in this case with a view to determining if Dr. R. C. Smith, whether fraudulently or otherwise, said or did anything which would tend to conceal from plaintiff his cause of action against the defendants; we have found nothing which could be construed to mean this. The most that can be said of what plaintiff claims Dr. Smith did, applies only to the nature and extent of plaintiff's injuries.

We fail to see how anything Dr. Smith could have said with reference to the nature and extent of plaintiff's injuries could have deceived him with reference to the fact that he had been injured at the time and in the manner which he testified to; he says he knew when he was hurt and knew at all times thereafter that he was hurt; his cause of action, be it much or small, originated in November, 1931, and he knew it at all times. Nothing in the record appears to show that Dr. Smith ever contended with plaintiff that he did not receive an injury at the time and in the manner claimed. The most that can be said of what Dr. Smith told plaintiff is that the nature and extent of his injuries were not as serious as plaintiff believed they were.

As a general rule it should be conceded that, if a fraud is perpetrated by one upon another which conceals the latter's cause of action, limitation will not begin to run until the one asserting the action knew or by the exercise of reasonable diligence could have known he had such an action. 28 Tex.Jur. p. 164, § 75, and many cases there cited to which we refer.

The authorities cited by plaintiff in support of his contention that, because of the fraudulent acts of Dr. R. C. Smith, he was prevented from instituting his suit within the limitation period, are not in point on the issue; those of them which discuss a fraudulent concealment by a defendant of the action support the rule last above an-

nounced. We have found no decision which holds that a fraudulent concealment of the nature and extent of one's claim would toll limitation on the action itself. While upon the contrary we find the courts have drawn the distinction between fraudulent acts which conceal the cause of action and other elements that may enter into the case, such as deception as to location of property, the subject matter of suit, and the nature and extent of the injuries received.

■ Bearing on this point is the case of Houston Waterworks Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36, 37. That was a case in which a party sustained damages to a house by the cutting of an arch by another and the extent of the former's damages was unknown to him at the time and was not ascertained until after the lapse of the period of limitation. It was there held that the cause of action accrued at the time of the cutting of the arch and limitation started to run at that time. One expression in the opinion announced the rule in this language: "The fact that the extent of the damages he would have been entitled to recover was not so easily and clearly shown, at the time the cause of action accrued, as was this, after the walls of the house were cracked, furnishes no reason why the statutory bar should not be enforced. * * * It has been held, in cases where there was fraudulent concealment of a cause of action, that the statutes of limitation would [not] operate until the facts became known, or by the exercise of ordinary diligence might have been known."

In the case of Griffith v. Shannon (Tex. Civ.App.) 284 S.W. 598 (writ dismissed), the defendant had removed from his known residence and the plaintiff did not know where he was for 37 years, and, for this reason, refrained from filing his suit in a just cause of action during that period of time. The distinction is there drawn between the action itself and other causes considered by plaintiff to justify delay. The well-settled rule is again there declared, that concealment to prevent the running of the statute must relate to the concealment of the cause of action, and not the concealment of the parties, since plaintiff could institute his action and thereby suspend the period of limitation.

Defendants have called our attention to the case of Chamberlain v. C., B. & Q. Ry. Co. (C.C.) 27 F. 181, 182, a Missouri case which we think properly announces the rule applicable to the instant case. There plaintiff received an injury while a passenger on one of defendant's trains. The Missouri statute [Mo.St.Ann. § 879] provides that if any person by an improper act prevents another from commencing an action, the statute of limitation does not run. Plaintiff's physician contended, and so advised plaintiff, that his condition was not the result of the injuries claimed to have been sustained but were the result of a disease he had contracted in the past. On similar facts before us the court said: "Now on the face of it, it appears that he was hurt, and knew it; that he was injured, and was conscious of it; and all that can be said is that these representations, falsely and fraudulently made by the doctor, were as to the extent of the injury which he had sustained. That does not bring the case within the statute. There was nothing in that to prevent the commencement of the action. All that can be said is that the representations of the doctor misled him as to the extent of the injury he suffered, not as to the fact that he had a cause of action, or had suffered injuries."

■ It is clear to our minds that Dr. R. C. Smith did not fraudulently conceal from plaintiff that he had a cause of action for the injuries sustained; but only that Dr. Smith was mistaken in his diagnosis as to the extent of the injuries. The plaintiff testified on the trial, as we have seen, that he knew he was injured, knew when and how he received his injuries, and had suffered a great deal as a result thereof, and that he knew he had not suffered in that way at any time before being injured. Not being a physician he doubtless did not know the extent of his injuries and in this he could be deceived, but certainly could not be made to believe he did not receive an injury.

We can understand why plaintiff had confidence in Dr. Smith; he had called him into his family periodically for a number of years before the accident; Dr. Smith was recommended by the defendants, and his services could be had on this occasion without pay from plaintiff. Nor can it be said that a reasonably prudent person would have declined to call Dr. Smith and to believe what he said in the case; yet it is admitted by plaintiff that in early October, 1933, and before his cause of action was barred, he lost confidence in Dr. R. C. Smith and consulted

Dr. P. K. Smith, and from him learned what he terms the truth about his condition. The suit was filed, as we have seen, in 1935, long after two years had expired from the date of the injury. It is contended that limitation only started to run from and after plaintiff learned the nature and extent of his injuries from Dr. P. K. Smith, but with this we cannot agree, for the reasons herein set out.

Plaintiff has cited several cases in his brief in support of his contention, which discuss at length acts of fraud perpetrated by one party upon another, in bringing about a compromise settlement and the execution of a release in a claim for damages, growing out of personal injuries sustained. By a study of the principles announced in such cases it is obvious there is a marked distinction between the rule announced and the one involved in a case, where, as in this one, it is claimed the defendant has fraudulently concealed plaintiff's cause of action and his right to sue. A detailed discussion of those principles would add nothing to the point involved in this appeal.

Confining ourselves to plaintiff's cause of action, without regard to the severity and longevity of his injuries, we think the evidence is conclusive that plaintiff's cause of action arose at the time he received the injury; that as a result thereof he had constantly suffered up to the time of the trial. That the belief, expressed by Dr. R. C. Smith, that the injuries sustained were slight, and that if he would follow instructions he would soon be well, even though Dr. Smith was mistaken, do not constitute a fraudulent concealment of plaintiff's cause of action, and the trial court was warranted in giving the peremptory instruction. It follows that we must overrule the assignment of error challenging the court's action in giving the instruction and entering judgment thereon.

The disposition made by us of the foregoing assignment makes it unnecessary for us further to discuss the matter of whether or not the rules under the Federal Employers' Liability Act 45 U.S.C.A. §§ 51–59) control the rights of the parties here, and we therefore express no opinion on the point there raised.

Finding no error in the action of the court in peremptorily instructing a verdict against the plaintiff and rendering judgment thereon, the judgment of the trial court is affirmed.