### COLLINS et al. v. GRIFFITH.

#### No. 4954.

Court of Civil Appeals of Texas. Amarillo.

Dec. 5, 1938.

Rehearing Denied Feb. 27, 1939.

Collins, Jackson & Snodgrass, of San Angelo, Crenshaw & Dupree, of Lubbock, Carl Rountree, of Lamesa, and L. D. Ratliff, Jr., of Spur, for appellants.

G. E. Lockhart and Nelson & Brown, all of Lubbock, Ben G. O'Neal, of Wichita Falls, Price & Moss, of Post, and Truett Smith, of Tahoka, for appellee.

JACKSON, Chief Justice.

The appellee, Lula Hill Griffith, a widow, instituted this suit on June 13, 1935 in the District Court of Garza County against the appellants, Alex Collins, J. Willis Johnson, H. E. Jackson, J. S. Hixson and George E. Webb, executors and trustees under the wills of J. M. Shannon, deceased, and his wife, Margaret A. Shannon, deceased, to recover an undivided one-sixth interest in about ·210 tracts of land consisting of approximately 140,-000· acres situated in Crockett, Scurry and Garza Counties, Texas, and some town lots in the city of San Angelo in Tom Green County.

In the original petition no claim was asserted to any interest in personal property, but on March·23, 1936, appellee filed a third amended original petition in which for the first time she claimed a one-sixth interest in the personal property owned by J. M. Shannon at his death. On November 8, 1937, she filed a fifth amended petition against Alex Collins, J. Willis Johnson, H. E. Jackson, J. S. Hixson, J. P. Hill, W. M. Hemphill and Frank White, but omitted George E. Webb on account of his death since filing the suit, asserted C. D. Webb had been appointed trustee in his place under the will of Margaret A. Shannon, but that he was not a necessary party for the reason no judgment or relief was sought against the trustees individually.

The appellee in her first count sues in trespass to try title for an undivided one-sixth interest in the lands described, and in addition, sought to recover an undivided one-sixth interest in the personal property belonging to J. M. Shannon and Margaret A. Shannon at the time of their respective deaths.

In the second count she pleads that her deceased husband, Ben Griffith, J. M.

Shannon and A. F. Clarkson entered into a contract about 1886 with the Capitol Freehold Land & Investment Company under the provisions of which they agreed to construct and did construct fences around, about and across three million acres of land situated in the Panhandle; that they made a profit out of the construction of such fences of not less than $65,000, and Ben Griffith owned a one-third undivided interest therein; that prior to their marriage he gave her a one-half interest in the profits accruing to him from the fence contract, and by reason thereof, one-sixth of the profits derived from the erection of the fences became her separate property. She alleges that J. M. Shannon collected from the Capitol Freehold Land & Investment Company the profits derived from the erection of the fence and unlawfully and without the knowledge or consent of her husband or herself and for the purpose of defrauding them, misappropriated their interest in said profits and appropriated them to his own use and benefit. She avers that he invested the funds in sheep and cattle, sold them, reinvested the proceeds, and thereby acquired the lands and personal property involved in this litigation. She alleges she knew nothing of the misappropriation of her funds by Shannon, the diligence she exercised to learn the disposition he had made of her funds, her failure to discover, his concealment of the facts for years, and that she only discovered the fraud and the misappropriation of her money about eighteen months before she instituted this suit.

This case was before this court on a former appeal and the judgment of the trial court overruling the pleas of privilege filed by certain of the appellants was affirmed. Collins et al. v. Griffith, Tex. Civ.App., 105 S.W.2d 895.

The appellants, in the trial on the merits, answered by general demurrer, special exceptions, a plea of not guilty, general denial, certain special denials, and allege that Ben Griffith sold his interest in the contract to Shannon and Clarkson; that from 1886 to 1902 Shannon resided in the city of Colorado in Mitchell County, Texas, and was well known; that it was general knowledge when he moved to Crockett and then to Tom Green County and he could have been easily located at any time from 1886 until his death in San Angelo in 1928; that if Ben Griffith ever

gave appellee any interest in the fence contract it was a parole transfer and he remained the apparent owner of the entire claim.

They urge as a bar to appellee's cause of action a plea of res judicata, which in substance is that Ben Griffith on November 10, 1923 instituted suit in the District Court of Tom Green County against Shannon and Clarkson in Cause No. 4741 on the identical cause of action appellee pleads in this case; that said suit was prosecuted to a final judgment, resulted in a decree in the trial court against Griffith, was affirmed by the Court of Civil Appeals at Austin, Griffith v. Shannon, 284 S.W. 598, and on an application for a writ of error therein, dismissed by the Supreme Court.

The appellants plead that appellee knew of the litigation by her husband, cooperated with him and his attorneys in its prosecution, and that by reason thereof, she is estopped by the judgment against her husband to assert any interest in the property involved. They also urge as a defense laches, stale demand, the two, three, four, five, ten and twenty-five year statutes of limitation.

In a supplemental petition filed on November 8, 1937, in reply to appellants' answer, appellee presents a general demurrer, general denial, and claims that from the years 1886 to February 7, 1932 she was a married woman; pleaded her coverture against the defense of laches and limitations; that her suit was to recover separate property acquired prior to her marriage; that it was not included in and no recovery thereof sought in the suit prosecuted by her husband against Shannon and Clarkson.

In response to special issues submitted, the jury found, in effect, that Ben Griffith did not dispose of his interest in the contract to Shannon and Clarkson; that prior to his marriage with appellee he gave her an undivided one-half interest in his profits in the fence contract; that Shannon did not account to appellee or her husband for her share in the profits; that she exercised ordinary diligence to discover the whereabouts of Shannon from 1886 to 1923; that Shannon invested appellee's profits from the contract in property and reinvested the proceeds of the sale thereof in other property, and that all the property owned by Shannon at his death accrued from the profits of the fence build-

ing contract; that appellee exercised ordinary diligence to discover whether her profits had been invested in real and personal property and whether Shannon had accumulated his property by such investments and reinvestments, but that he concealed from her the fact that he had so invested said profits, and thereby acquired his property; that she did not learn until less than two years before June 13, 1935 that Shannon had invested her money and thereby acquired his property; that she knew of the filing in November, 1923 of the suit by her husband against Shannon and Clarkson, was present in court when the trial of the case was had, present at conferences between her husband and his attorneys while said suit was pending, but was not advised that the suit was to recover one-third of the money profits accruing from the fence contract, or one-third of the property belonging to Shannon and Clarkson; that she wrote letters for her husband relative to the suit, but did not know he sought to recover one-third of the profits made by the joint adventure; that from the death of Shannon, May 28, 1928, his wife, Margaret A. Shannon, was in possession of the real estate and personal property of the deceased and held possession thereof until her death on December 13, 1931; that her possession of such property was open and adverse at all times; and that from the death of Margaret A. Shannon, the trustees of her estate had possession of the land and personal property which she had owned and held possession thereof until June 13, 1935; that such possession was peaceable and adverse; that Mrs. Shannon paid all taxes accruing on said property while she had possession thereof and that the trustees of her estate had paid all taxes accruing on said property during their possession.

Upon these findings the court, so far as material to this appeal, entered judgment that appellee recover from appellants in their capacity as trustee a one-sixth undivided interest in and to all the property, both real and personal, described in her petition, except the lots in San Angelo, and ordered a partition of the property, appointed commissioners of partition, directed them to proceed to a division of the property, and from said judgment this appeal is prosecuted.

The appellants assail as error the action of the trial court in refusing, as requested, to direct a verdict in their behalf or grant their motion for judgment non obstante veredicto, asserting the testimony shows that appellee's cause of action, if any she ever had, was barred by the statutes of limitation, and that their pleas of res judicata and estoppel by judgment were conclusively shown.

It was agreed on the trial between appellants and appellee that the facts vested all the title to the lands in appellants under the three, five, ten and twenty-five year statutes of limitation except as the appellee might be able to except herself from the bar of said statutes.

The testimony discloses that in 1886 J. M. Shannon, A. F. Clarkson and Ben Griffith, as joint adventurers, entered into a contract with the Capitol Freehold Land & Investment Company under the provisions of which they constructed in the year 1886 about 300 miles of fence for said company; that each of the joint adventurers was entitled to a one-third interest in the profits made; that Ben Griffith, during the construction of the fence, gave Miss Lula Hill—now Mrs. Lula Griffith—before he married her, a one-half undivided interest in his one-third of the profits realized from the construction of the fence; that a short time previous to the completion of the fence he went to Miss Hill's home in Louisiana and they were married. The evidence tends to show that the fence was completed and the Freehold Land & Investment Company paid Shannon when it was accepted something in excess of $25,000 on the enterprise, but that he never settled with the appellee or her husband for their respective interests in the profits, or any part thereof, but appropriated all such funds to his own use and benefit; that he invested the money in sheep and cattle, sold them, and reinvested the proceeds in other live stock and lands, and as a result of such investments, the land and personal property involved in this suit were accumulated; that he willed his property to his wife, who had possession thereof and paid all taxes thereon until her death on December 13, 1931, when appellants herein, as trustees, took possession thereof and held and paid all the taxes until January 13, 1935, when appellee instituted this suit.

The record tends to show that J. M. Shannon occupied a fiduciary relationship to Ben Griffith and his wife, and

if he purchased property with funds arising from the joint adventure and failed to account for their part thereof, a constructive trust was imposed upon him by equity requiring that he do justice to those interested in the profits of such enterprise, since property purchased under such circumstances is impressed by equity with a constructive trust. Collins v. Griffith, supra.

The record shows that Shannon resided in Colorado in Mitchell County from 1886 to 1902, and thereafter he resided in Crockett and Tom Green Counties until the time of his death; that during all these years he was actively engaged in business, was an extensive trader in sheep, cattle and land and well known; that after appellee and Ben Griffith married they returned to the town of Colorado on December 26, 1886; discovered that Shannon, Clarkson and Griffith had incurred debts in the erection of the fence which had not been paid, and Ben Griffith discharged these debts with his individual property. Appellee and her husband failed to locate J. M. Shannon and left Texas on March 15, 1887, going to the state of Colorado and from there to various other states, but returned to Texas some time in 1920; that during all these years the appellee made inquiry orally and by letters in an effort to find Shannon but failed until 1923 when she learned he was residing in San Angelo where her husband visited and conferred with him in regard to collecting his interest in the fence contract, and appellee saw and talked with Shannon at San Angelo during that year.

On November 10, 1923 appellee's husband instituted Suit No. 4741, Griffith v. Shannon et al., supra, in the District Court of Tom Green County, against J. M. Shannon and A. F. Clarkson. He alleged that, together with Shannon and Clarkson, in 1886, he entered into a contract with the Capitol Freehold Land & Investment Company to construct certain fences; that each was to have one-third of the profits, but he received no part thereof; that while he was absent from Texas the partnership was continued by Shannon and Clarkson and all the property accumulated by such partnership in live stock and lands were assets of the firm of Shannon, Clarkson and Griffith, one-third of which belonged to him. He pleaded that if mistaken as to the partnership having been continued, that Shannon and Clarkson held one-third of the property accumulated in trust for

him, as the property owned by them had been acquired from the proceeds of the fence contract and constituted a trust estate in which he had a one-third interest, or that in any event, he was entitled to one-third of the profits collected on the fence contract, which he claimed were not less than $26,250. He alleges that Shannon and Clarkson had disappeared, his efforts to find them, a failure to do so; asked for an accounting, one-third of all their property, and in the alternative, for one-third of the profits, $8,750. He claimed and sued for an entire one-third interest but no mention is made of appellee's owning any part thereof.

The defendants in Cause No. 4741 excepted to the petition because the allegations therein showed the claim to be barred by limitation, and answered by general denial and pleas of limitation. The case was heard in the district court, the exceptions were sustained and the cause dismissed. From this judgment an appeal was prosecuted and the Court of Civil Appeals at Austin sustained the action of the trial court in an opinion reported in Griffith v. Shannon, 284 S.W. 598, 599, and a writ of error was dismissed by the Supreme Court.

On July 29, 1927, A. B. Griffith instituted the suit against the same parties urging cause of action in Sutton County, Texas, but he declined to prosecute the case and non-suited in the following November.

During all these years, the appellee in this case informed no one of her claim; neither did she advise Shannon that she owned a one-half interest in her husband's share of the profits in the fence contract. The record reveals that she was present at several conferences between her husband and his attorneys during the pendency of his suit in Tom Green County and wrote letters relative thereto. The district judge who tried the case, two of the attorneys who represented Shannon and Clarkson, and three of the attorneys who represented Ben Griffith testified that appellee was in the court house at the trial, heard the petition of her husband read and the discussion thereon by the attorneys, and her husband's lawyers stated that she was frequently present at conferences between them and her husband and the fact that he was suing to establish a trust upon the property of Shannon and Clarkson and recover one-third thereof, or in the alternative, one-third of the money, was frequently dis-

cussed in her presence, and that in writing letters relative to the case she acted for her husband.

The appellee's testimony contradicted these facts in some particulars, but she did testify that she had information and knew in 1886 that Mr. Shannon had gotten the money coming to her out of the fence contract but did not know what he did with it; that she tried through all the years to find Mr. Shannon and tried to learn what he had done with her money and to secure evidence to prove such facts; that she knew her husband instituted suit in Tom Green County against Shannon and Clarkson, but this action was against her advice. Appellee says she instructed her husband not to include her interest in his suit because she never intended to sue for her part until she could prove where her money had been invested and what she was suing for; that she wrote letters pertaining to the suit and her husband advised her while the suit was pending that he was suing for one-third of the profits but after he lost his case he told her he had sued for one-third of all the Shannon property but lost the suit; that she knew as early as 1923 that Shannon had property out of which she could collect any judgment she might obtain against him. She remembered the death of Shannon, was informed that he left all of his estate to his widow, Margaret A. Shannon, who, she knew, lived in San Angelo from the time of the death of her husband in 1928 until she died in 1931, and that she learned soon after Mrs. Shannon's death that she left considerable property to the Shannon Memorial Hospital at San Angelo.

She admitted that in trying to find Shannon she never communicated with the postmaster of the town of Colorado, the tax collector, or any of the officers of Mitchell County; that she had a brother who was residing in Colorado when she left there in the spring of 1887 and requested him to advise her if he learned where Shannon could be found. She corresponded with this brother while she was absent from Texas but received no information from him about Shannon; that she never examined the deed records, the probate records, or any of the other records in any of the counties where the property for which she sues is located to get information about Shannon or his property.

■ This record shows, without contradiction, that Shannon served as a juror in Mitchell County with appellee's brother in May, 1887; that he served as a juror in said county each year from 1886 to 1892; that he rendered property and paid taxes thereon in said county. The deeds introduced and the agreement of the parties disclose that when Shannon acquired a piece of property he placed the deed thereto on record in the deed records of the county where the land was situated; that his possession of such property was at all times open and notorious; that Shannon continued to reside in Mitchell County until 1902, then moved to Crockett County, and from there to Tom Green County, where he was living in 1923 and continued to reside until he died in 1928. Appellee in her testimony admits that she had no communication with Shannon by letter, or otherwise, between 1886 and 1923. She offered the testimony of witnesses who stated that Shannon had told them on different occasions that he made his start with the money received from the Capitol Freehold Land & Investment Company on the fence contract. In order for appellee to prove her case it was necessary to trace her funds into the property she sought to recover and she concedes in her brief that such tracing was very easy for the reason that Shannon never parted with title to any tract of land he ever bought.

■ In Brotherton et al. v. Weathersby, 73 Tex. 471, 11 S.W. 505, it is said: "The doctrine is elementary that the statute of limitations does not run against an express trust until the trustee has done some act which shows a repudiation of the trust, and which is brought to the knowledge of the cestui que trust." See also Wilson v. Simpson, 80 Tex. 279–287, 16 S.W. 40.

■ However, the suit before us involves a constructive trust or trust ex maleficio.

■ In Cole v. Noble, 63 Tex. 432–434, the Supreme Court holds:

"It is common learning that in cases of resulting trusts, so long as the trust relation is admitted, and there is no adverse holding by the trustee or any one claiming under him, no lapse of time will bar the cestui que trust. Id. [1 Perry on Trusts, § 127], 141; Dow v. Jewell, 18 N.H. 340 [45 Am.Dec. 371].

"In case of a constructive trust, which is born of fraud, and which presupposes from its beginning an adverse claim of right on the part of the trustee by implica-

tion, the statute will commence to run from the period at which the cestui que trust could have [v] indicated his right by action or otherwise. Hunter v. Hubbard, 26 Tex. 537; Anderson v. Stewart, 15 Tex. 285; Carlisle v. Hart, 27 Tex. 350.

"But even in such cases the trustee must bring himself clearly within the position of a continued and consistent adverse claimant (Grumbles v. Grumbles, 17 Tex. 472), and the cestui que trust must have no reasonable excuse for failing to prosecute his claim within the proper time."

Shannon was a continued and consistent adverse claimant. Did appellee have a reasonable excuse for failing to prosecute her claim?

In Bogert on Trust and Trustees, Vol. 4, page 2766, § 953, the author states the rule as follows: "The very foundation of all constructive trusts is an adverse inequitable holding of property by the defendant. It would seem to follow clearly that the cause of action in favor of the wronged person to obtain a constructive trust should arise whenever he learns of this wrongful withholding of property, or should have learned of it, had he used reasonable diligence. There is no opportunity for treating the ordinary constructive trust situation as one of friendly holding for the cestui, as in the case of the express and resulting trust. By every definition and from its inherent nature it is a case of hostile and improper holding from the beginning, in the absence of some express statement by the holder to the contrary."

The circumstances that appellee did not find Shannon, that she was absent from the state for thirty-seven years, or that Shannon had concealed himself from appellee, would not toll the statutes of limitation, Griffith v. Shannon et al., supra, since concealment to prevent the running of limitations must be of the cause of action and not of the parties, for by the institution of a suit the statute would be suspended. Pruett v. Wichita Falls & S. R. Co., Tex.Civ.App., 109 S.W.2d 538. That she was ignorant of the amount of the damages recoverable would not suspend the operation of limitation. American Indemnity Co. v. Ernst & Ernst, Tex. Civ.App., 106 S.W.2d 763.

In 37 C.J. page 943, para. 309, the author says: "Plaintiff's inability to discover the whereabouts of defendant and of property which the latter has fraudulently taken, does not amount to an inability to discover the fraud so as to postpone the running of the statute although defendant has absconded from the state."

In the same volume, page 958, para. 369, it is stated: "A concealment of the existence of property which might be subjected to satisfy judgment in the absence of a concealment of the cause of action will not suspend the operation of the statute."

The fraudulent appropriation by Shannon of appellee's profits from the fence contract with the Capitol Freehold Land & Investment Company constitute her cause of action.

In Glenn v. Steele et al., 61 S.W.2d 810, the Supreme Court, in a per curiam opinion, holds that: "The rule is that limitation begins to run from the time of the discovery of the fraud, or from the time it might have been discovered by the use of reasonable diligence. Stated in another form, fraud will prevent the running of the statute of limitations until discovered, or by reasonable diligence might have been discovered. Knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud is in law a knowledge of the fraud. Tex.Jur. vol. 20, p. 112, § 75, and authorities there cited."

When did appellee obtain information to the effect that Shannon had misappropriated the profits derived from the fence contract, or when did she learn facts that would put a reasonably prudent person on inquiry? Appellee and Ben Griffith were married in Louisiana December 22, 1886 and returned to the town of Colorado, arriving December 26, 1886. According to the evidence offered by appellee and her own testimony, promptly on arrival they found unpaid debts which had accrued to the joint adventurers on the fence building enterprise; Shannon and Clarkson had disappeared; she and her husband paid such debts, but were unable to locate either of their co-adventurers. She testified: "I had information and knew that Mr. Shannon got my money but I didn't know what he did with it.

"Q. And you knew and had been knowing that he got your money from 1886, hadn't you? A. Yes. I didn't say Mr.

Shannon more than Mr. Clarkson, the two together.

"Q. At any rate, in 1886 you knew then, as you contend now, that Shannon had got your money? A. Yes.

"Q. Out of the XIT fence contract? A. Yes.

"Q. And that was the reason through all the years that you were trying to locate Shannon? A. Sure."

The knowledge and information she secured in 1886 caused her to promptly begin an investigation, which she continued persistently but without success, according to her testimony, until less than two years before filing this suit June 13, 1935; hence, her knowledge and information in 1886 were such as caused her to investigate—not to learn that her money had been misappropriated; this she had already discovered—but to secure testimony to prove the disposition that had been made of her funds. Certainly, she had "knowledge of facts" that caused her "to make inquiry" that led to a "discovery of the fraud," and this "is in law knowledge of the fraud," and limitation began to run in 1886 when she had knowledge and information of the fraud.

In view of the testimony in the record which reveals, without contradiction, that Shannon resided in Mitchell County from 1886 to 1902, did jury service in said county at least once each year from 1886 to 1892, moved from Mitchell County about 1902, and thereafter resided in the nearby counties of Crockett and Tom Green until he died in San Angelo in 1928; that he was well and widely known as a business man throughout that section of the state, recorded all of his deeds, kept the taxes on his property paid; that appellee admits the funds were easily traced at the time of the trial; that Shannon told several parties he made his start in life with the profits derived from the fence contract, and the testimony of appellee that she knew and had information in 1886 that he had gotten off with her funds; and that she never communicated with Shannon from 1886 to 1923, we believe the findings of the jury to the effect that Shannon had concealed from appellee that he had invested the profits derived from the fence contract in property; that she had exercised ordinary diligence to learn whether Shannon had acquired his property from the investment of such profits; that appellee had, by the use of reasonable diligence, been unable within two years prior to the filing of her suit to ascertain that he had acquired his property by such investments are without sufficient support in the testimony; that her claim was barred by limitation, and the court erred in refusing to direct a verdict in behalf of appellants and in failing to grant their motion non obstante veredicto.

There are other facts in the record which, in our opinion, show appellee's cause of action could not prevail over the defense of limitations. The record is conclusive that Ben Griffith, appellee's husband, instituted suit in the District Court of Tom Green County on November 10, 1923 in Cause No. 4741 against Shannon and Clarkson on the identical cause of action alleged and relied on by appellee in the instant case. The jury found appellee in this case was present in court when Cause No. 4741 was tried. She admits she knew the suit was filed by her husband; that she wrote some letters for him relative to the case, was present at some conferences between him and his attorneys; that she knew her husband had sued for one-third of the profits; says she had advised him against the suit—not because he did not know of the fraud perpetrated, which constituted his cause of action—but for the reason he did not have sufficient testimony to prove his case. She testified she learned from him while the case was pending that he sued for one-third of the profits, and says he told her after the case had been tried that he had sued for one-third of all the property owned by Shannon, but had lost the suit. The jury finds appellee was present in the court room when her husband's case was tried and even if she were relying on an express or resulting trust in which repudiation is necessary to put limitation into operation, she was forced to realize that her husband lost his suit because Shannon and Clarkson had repudiated the trust alleged, denied its existence, the misappropriation of the profits, and all liability to Griffith. These circumstances manifestly were sufficient to place appellee on inquiry and, by reasonable diligence, she would have been led "to a discovery of the fraud," which "is in law a knowledge of the fraud" and, obviously, limitations would have operated against her from such time and the findings of the jury which contradict these conclusions are, we think, without sufficient support in the testimony.

The record indicates that appellee was fifteen or sixteen years old when

her interest in the profits was donated to her in 1886 by Ben Griffith prior to her marriage with him December 22, in the same year, but the disabilities of minority and coverture cannot be tacked to extend the period of limitation. Article 5544, R.C. S.; Ragsdale v. Barnes, 68 Tex. 504, 5 S. W. 68; Louisiana & Texas Lumber Co. v. Lovell et al., Tex.Civ.App., 147 S.W. 366. The appellee could not avail herself of the plea of coverture to defeat limitation under article 5518, since married women are not exempted thereby after they become twenty-one years of age. Holt et al. v. Holt, Tex.Civ.App., 59 S.W.2d 324; Barrett et al. v. Crump, Tex.Civ.App., 15 S.W.2d 672. Appellee filed her suit June 13, 1935, but made no claim for any interest in personal property until she filed her third amended original petition, March 23, 1936. We conclude, therefore, that under this record, appellee's cause of action was barred by the statutes of limitation.

 If we are correct in the foregoing conclusions, the other assignments of error urged by appellants become immaterial and a discussion thereof is unnecessary. The case was apparently thoroughly developed on the trial and the judgment is here reversed and rendered in behalf of appellants.