J. M. GUFFEY PETROLEUM COMPANY v. H. A. HOOKS ET AL.

Decided November 21, 1907.

**1.—Adoption—Statute Construed.**

The statute concerning the adoption of minor children does not require, as an essential condition of the act of adoption, that the instrument executed for that purpose, in addition to having been acknowledged and filed for record, should have been also actually recorded by the clerk, to give it effect and to charge third parties with notice of the adoption.

**2.—Filing for Record.**

An instrument intended. for record and handed to the clerk at some other place than his office takes effect as a recorded instrument from the time it is actually deposited and filed by the clerk in his office.

**3.—Subsequent Purchaser—Want of Notice—Presumption.**

After the lapse of many years and the death of the parties to the transaction, from proof of the payment of the purchase-money by a subsequent

purchaser of land the presumption may be indulged that such purchaser was an innocent purchaser without notice of a prior unrecorded deed to the same land.

**4.—Adoption—Notice.**

The proper execution of a deed of adoption gives to the adopted child the same status as a natural child, and of this status all persons must take notice.

**5.—Principal and Agent—Execution of Power—Presumption.**

Where an attorney in fact, having no interest in the land, executes a deed in his own name without reference to the power of attorney, the deed will be referred to the power and will suffice to convey the title of the owner.

**6.—Deed—Estoppel.**

A deed by an attorney in fact under a power which does not authorize a covenant of warranty, will pass an after-acquired title of the owner by estoppel.

**7.—Statement of Facts—Charge—Conflict.**

Where it appears from the statement of facts that certain evidence was introduced, and incidentally from the charge of the court that such evidence was not introduced, the statement of facts must prevail.

**8.—Lost Deed—Proof of Execution—Circumstantial Evidence.**

Where it is sought to establish the execution of a lost deed it is admissible to prove that there had been sales and resales of the land under such title and claim of ownership by the vendees, and general reputation in the neighborhood that the land belonged to the alleged vendees, is competent evidence.

**9.—Adoption—Parol Declarations as Evidence.**

Where the evidence was conflicting as to whether or not the adoptor intended to have the deed of adoption recorded, the subsequent declarations of the adoptor that he had adopted the minor, are admissible in evidence.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower, Jr.

*D. Edward Greer* and *F. C. Proctor,* for appellant.—The statutes of this State, providing the method whereby one may adopt as his legal heir another, provide that the instrument of adoption shall be recorded, and before the legal status of the heir is created, it is necessary that the deed of adoption should be actually recorded, and when the adoptor dies before the deed is recorded, the adoption is not complete and the status of heir is not created. Revised Statutes, arts. 1, 2; Belbaze v. Ratto, 69 Texas, 639; Barron v. Thompson, 54 Texas, 242; Evans v. Frisbie, 84 Texas, 343; Miller v. Koertge, 70 Texas, 167; Nye v. Moody, 70 Texas, 436; Willis v. Nichols, 5 Texas Civ. App., 157; Gullett Gin Company v. Oliver, 78 Texas, 182; Pierce v. Wimberly, 78 Texas, 189; Corbett v. Redwood, 58 S. W. Rep., 550; Seawall v. Haymaker, 127 U. S., 719; L. ed., book 32, p. 301; Harkins v. Forsyth, 11 Leigh (Virginia), 301; Rorer v. Roanoke National Bank, 4 S. E. Rep. (Va.), 820; Elliott v. Piersol, 26 U. S. (1st Peters), 340; L. ed., book 7, p. 170; James v. James (Wash.), 77 Pac. Rep., 1080.

That where a statute creates a right, not theretofore existing, the party claiming the right must bring himself within the terms of that statute, see Von Stein v. Trexler, 5 Civ. App. Rep., 302.

That there was no such thing under the common law as an adopted heir. Eckford v. Knox, 67 Texas, 204; Taylor v. Deseve, 81 Texas, 249; Fergeson v. Jones, 11 Am. St. Rep., 809; Tyler v. Reynolds, 53 Iowa, 146; same case, 4 N. W. Rep., 902; McCollister v. Yard (Iowa), 57 N. W. Rep., 448; James v. James, 77 Pac. Rep., 1080.

The statute provides the only method by which one person can become the heir of another by adoption. Taylor v. Deseve, 81 Texas, 249.

The statute must be complied with, else the status of heir does not arise. Ex parte Clark, 87 Cal., 641; Gill v. Sullivan, 7 N. W. Rep., 586 (Iowa); Shearer v. Weaver, 9 N. W. Rep., 907; Tyler v. Reynolds, 53 Ia., 146; 4 N. W. Rep., 902.

Where the only evidence tending to show that the purported adoptor in a deed of adoption delivered the deed of adoption to the clerk of the county court for record, shows that such purported adoptor delivered the instrument to the county clerk at the private residence of the adoptor at night, and not at the office of the clerk, this evidence does not show a legal deposit for record, and it was error for the court, under this state of the evidence, to submit in its charge to the jury, the question of whether A. B. Hooks, the purported adoptor, duly and legally filed the deed of adoption for record, and the court should have given the peremptory instruction to find for the defendant, and should have excluded the purported deed of adoption, when the same was offered in evidence. Edwards v. Grand, 121 Cal., 254; 53 Pacific Rep., 796; Schulte v. First Nat. Bank, 34 Minn., 48; 24 N. W. Rep., 320; Hoyt v. Stark, 134 Cal., 178; 66 Pacific Rep., 223; In re Norton, 53 N. Y. Supp., 924; Gates v. State, 128 N. Y., 221; 28 N. E. Rep., 373; People v. Peck, 22 N. Y. Supp., 576; 67 Hun., 560; U. S. v. Van Duszee, 185 U. S., 278; L. ed., 46, 909.

The court erred in submitting to the jury the question of whether or not A. B. Hooks was an innocent purchaser of value, without notice, against the deed executed by Elizabeth Taylor to A. Richardson, because the evidence in the case showed the following facts, and those only: That Elizabeth Taylor, who was admitted to be the owner of all the title ever acquired by Murphy Taylor, executed a conveyance to A. Richardson for three-sevenths undivided interest in this tract of land, prior to the time that she, the said Elizabeth Taylor, executed the deed to A. B. Hooks, purporting to convey all of the said Choate survey. The evidence did not show anything with regard to the value of the land at the time of the two conveyances. It did show that Hooks gave to Elizabeth Taylor, as the purchase price for this land, 100 head of sheep, worth about $1.50 a head. At the time Hooks bought from Elizabeth Taylor, the deed to A. Richardson was not recorded, but it was recorded in 1893. There was no evidence whatever that A. B. Hooks was without knowledge or notice of the deed to Richardson. In other words, there was no proof that he was a purchaser without notice or knowl-

edge of this deed.   Baldwin v. Root, 90 Texas, 552; Turner v. Cochran, 94 Texas, 484; Hawley v. Bullock, 29 Texas, 222; Rodgers v. Burchard, 34 Texas, 442; Hume v. Ware, 87 Texas, 384; Hamman v. Keigwin, 39 Texas, 42; Tate v. Kramer, 1 Texas Civ. App., 433; Moore v. Smith, 19 S. W. Rep., 781; Rogers v. Pettus, 80 Texas, 428; Dean v. Gibson, 34 Texas Civ. App., 508; Eastham v. Hunter, 98 Texas, 560.

Title to land can not be proved by general reputation in the community where the land lies, as to ownership, and such evidence is incompetent.   Even if evidence of such general reputation is admissible under any circumstances, it is not admissible or competent where the party in whom such reputation places the title, has a deed on record for the land.   Berniaud v. Beecher, 76 Cal., 394; 18 Pacific Rep., 598; Reiley v. Haynes, 39 Kans., 259; 16 Pacific Rep., 440; Hackett v. Amsden, 59 Vt., 553; 8 Atlantic Rep., 737; Canfield v. Hard, 58 Vt., 217; 2 Atl. Rep., 136.

*John L. Little, V. A. Collins* and *W. D. Gordon,* for appellees.

REESE, ASSOCIATE JUSTICE.—This is a suit by Charles Guy Knight suing by C. R. Hooks, his next friend, and H. A. Hooks, against the J. M. Guffey Petroleum Company for the recovery of an undivided one-fourth interest in 553 acres of land, the Champion Choate survey.   Plaintiffs also sought to recover damages for the extraction of oil from the land, but by agreement this was eliminated and the suit as tried, was only for the recovery of the land.

Upon the trial, with a jury, there was a verdict and judgment in favor of the said Charles Guy Knight for an undivided one-eighth interest in the land, from which judgment defendant appeals.

Both parties claim title under A. B. Hooks, some time deceased. Appellant by deed from the widow and three children of said Hooks, and appellee Knight as the adopted child of said Hooks.

A. B. Hooks died intestate in 1900, leaving surviving him his widow and three children who were his sole heirs and entitled to his whole estate, unless the said Charles Guy Knight was legally adopted by said Hooks under articles 1 and 2 of the Revised Statutes.

Appellant also claimed title under deed from the heirs of one E. B. Harper, to all of the land, and under deed from the heirs of A. Richardson to three-sevenths thereof.   The particular nature of these claims with reference to this appeal, will be explained hereafter.   It was also claimed by appellee that a certain deed from Tom Moore, only child of D. D. Moore, under which appellee claims, if valid at all, only conveyed an undivided one-half of the land, leaving the other half as an outstanding title.

The first, second and third assignments of error attack the validity of the instrument of. May 4, 1897, as an act of adoption, under the statute, upon the ground that it was not actually entered upon the record until after the death of A. B. Hooks, the alleged adoptor.   If appellant is correct in this, appellee has no title.

This instrument is sufficient in its terms, if properly executed as required by the statute, to create appellee the adopted child and

legal heir of A. B. Hooks. It was signed by Hooks on May 4, 1897; was on said date duly and properly acknowledged by him for record, and deposited by him with the county clerk for record. It has upon it the endorsement of the clerk that it was filed for record May 4, 1897. The instrument was never entered upon record until 1905. Hooks died in 1900, and appellant acquired by deed of his widow and three children their title to the land previous to such record. In 1905 this instrument was found among certain papers not intended to be recorded in the clerk's office by the attorney of appellee, and by his direction recorded. The jury found upon sufficient evidence that it was deposited with the clerk by Hooks for record and we find this to be a fact. It must be conceded that if the actual entering of the instrument upon record was essential to give it validity as between the parties, such recording after the death of Hooks was not sufficient for that purpose. The question arises, does the statute require, as an essential condition of the act of adoption, that the instrument, in addition to having been acknowledged and filed for record, should have been also entered upon the record by the clerk? The evidence is clear that A. B. Hooks intended to adopt appellee as his child and heir, and that he thought he had done so by signing, acknowledging and filing the instrument for record. This intention, however, must fail if the essential conditions of the statute were not complied with. The statute upon the subject is embraced in an Act passed in 1850 and is as follows:

"Article 1. Any person wishing to adopt another as his legal heir, may do so by filing in the office of the clerk of the County Court of the county in which he may reside, a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite in substance that he adopts the person named herein as his legal heir, and the same shall be admitted to record in said office.

"Article 2. Such statement in writing, signed and authenticated or acknowledged, and recorded as aforesaid, shall entitle the party so adopted to all the right and privileges, both in law and equity, of a legal heir of the party so adopting him; provided, however, that if the party adopting such heir have, at the time of such adoption, or shall thereafter have a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the party adopting him."

The question is one of some difficulty and appellant's contention is presented in its brief with much ability, by way of argument and authority.

It is clear that all of the conditions imposed by the statute must be complied with, else the right does not attach, but this helps us not at all to a proper determination of the question, as to whether it was the intention of the statute to make the recording a condition of the act of adoption. Among the cases relied upon by appellant is Rorer v. Roanoke National Bank, decided by the Court of Appeals of Virginia (4 S. E. Rep., 820). That case arose upon the construction of a statute of that State upon the subject of the execution

of deeds by married women. The statute referred to is section 7, chapter 117, code of 1873, and is as follows:

"When the privy examination, acknowledgment, and declaration of a married woman shall have been so taken and recorded, or when the same shall have been taken and certified as aforesaid, and the writing to which such certificate is annexed, or on which it is, shall have been delivered to the proper clerk, and admitted to record, as to the husband as well as the wife, such writing shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature which, at the date of such writing, she may have in any estate conveyed thereby, as effectually as if she were at the said date an unmarried woman; and such writing shall *not* operate any further upon the wife or her representatives by reason of any covenant or warranty contained therein."

The court holds that under this statute a deed of a married woman is not effective until actually recorded, with its certificate of acknowledgment. A careful reading of the entire opinion, which is quite lengthy, clearly shows that this conclusion was reached in view of the general policy of the State as shown by former laws on the subject, that recording was essential to the validity of such deeds. All of the statutes on the subject, of which there were several, beginning with that of 1674, are reviewed; all showing this settled policy. For instance, in the Act of 1734 (page 828) occurs the following language:

"And whereas, it has always been adjudged that when a deed has been heretofore acknowledged by a *feme covert,* and no record made of her privy examination, that such deed is not binding upon the *feme* or her heirs, yet the reason of those judgments are much questioned, and the same point is still constantly disputed. For settling the peace in that matter, be it further enacted, that the law shall always be held, and it is hereby declared to be therein, according to the said judgments, and shall never hereafter be questioned; and the clerks of the courts before whom any deed of a *feme covert* shall be acknowledged shall always hereafter record her privy examination." The same language is carried into the Act of 1748 and the Act of 1792 (page 830). It is declared by the court that the language of the Act of 1873, then being discussed, shows an intention not to depart from this settled policy. Clearly we think the case can not be considered an authority upon the proper construction of our statute, and the same must be said of Seawall v. Haymaker (127 U. S., 719), cited by appellant, which is really bottomed upon the Rorer case.

Another case cited by appellant is Tyler v. Reynolds (53 Iowa, 146). In this case a statute of Iowa providing for the adoption of children was the subject of discussion, and it was decided that the filing of the instrument of adoption was essential to make the act of adoption effective. The Act in question is as follows:

"Such instrument in writing . . . shall be acknowledged by all the parties thereto in the same manner as deeds affecting real estate are required to be acknowledged; and shall be recorded in the

recorder's office in the county where the person adopting resides, and shall be indexed with the name of the parents by adoption as grantor, and the child as grantee in its original name if stated in the instrument.

"Upon the execution, acknowledgment and filing for record of such instrument, the rights, duties and relations between the parent and child by adoption shall thereafter in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth."

It will be seen that the terms of the statute with regard to filing are much more imperative than those used by our statute, with regard to recording. The language is that, "Upon the execution, acknowledgment and filing for record, etc." Appellant gives to the language of section 2 of our statute the same significance, but the language does not require, if it permits, such an interpretation. Other cases are cited to the same effect construing this statute.

It is not without significance, we think, that the filing for record required by the statutes of Iowa is the act of the party himself executing the act of adoption, and not, like recording, the act of an officer over whom he has no control. We distinguish those cases, however, on the ground that the language of the statute in providing that *when* the instrument is filed for record it shall be effective, is materially different from our own, showing as it does, that from the time of such filing for record by the adoptor, and not before, the act of adoption becomes complete and effective.

Appellant also relies upon certain decisions of our own Supreme Court construing the statute with regard to judgment liens. (Belbaze v. Ratto, 69 Texas, 639; Evans v. Frisbie, 84 Texas, 343, and others.) A very slight consideration of the terms of that statute will suffice to show that these decisions have no application. (Arts. 3287, 3288, 3289, Rev. Stats.) To make effective the lien a copy of the judgment is required to be indexed, which could not be done until it was recorded. The emphatic language is used that, "when any judgment has been recorded and indexed, as provided in the preceding articles, it shall, *from the date* of such record and index, operate as a lien, etc." The intention of the Legislature is made clear by emphatic declaration that the lien shall take effect *from the date* of the recording and indexing and not until this is done.

Now, the language of our statute with regard to adoption is entirely different. Section 1 of the Act provides that any person may adopt another as his legal heir "by filing in the office of the clerk of the County Court of the proper county in which he may reside a statement in writing signed and duly authenticated, or acknowledged, as deeds are required to be, which statement shall recite, in substance, that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office." We think this section prescribes, as its language indicates, everything that had to be done by the adoptor to render the act of adoption complete.

Appellant contends that section 2 prescribes an additional act, to

be done by the clerk, before the adoption is effective. Having by section 1 prescribed the acts to be done to enable one person to adopt another, section 2, in prescribing the rights growing out of the act of adoption, provides, that "such statement in writing, signed and authenticated or · acknowledged and recorded *as aforesaid,* shall entitle the party so adopted to all of the rights and privileges, both in law and equity, of a legal heir of the party so adopting him, etc."

It is a familiar rule of interpretation of statutes, that their purpose and object must be kept in view in order to determine the legislative intent. If it had been the intent of this statute that any person wishing to adopt another should, in addition to signing, acknowledging and filing for record the written statement, also have it recorded, we think such provision would have been made in the first section, and in the same clear and unambiguous terms as are' used in that section, the purpose of which was to prescribe the essential requisites of the act. To have intended that such effect should be given to the word "recorded" in the second section was but to set a trap for the ignorant and unwary. Section 1 prescribes that the written statement shall be "signed, acknowledged and filed for record" by the adoptor. We are of the opinion that it better harmonizes the two sections to construe section 1 as prescribing what was to be done in adopting a child, and section 2 as prescribing the right attaching to such act of adoption. There is nothing in the language of either section to require the conclusion that it was intended, that having done what he was required to do by section 1 the adoptor had also to require the clerk to record the instrument before his intention could be given legal effect. We the more readily adopt this interpretation of the statute, reasonable in itself, because it carries out instead of defeating the clear intention of the parties. It is conceded, indeed it is insisted upon, by appellant that the purpose of such record was not to give notice. Surely the adoptor by executing, with the formalities prescribed, the act of adoption, and filing it with the clerk to be recorded, and thus putting the instrument beyond his power to recall, had given sufficient evidence of his intention. It would have added nothing to this to require him to see that it was actually entered upon the record. The statute might have so required, but we do not think it has done so.

We take the liberty of quoting here the following from the opinion of the Supreme Court of Wyoming in the case of Nugent v. Powell, from note to Van Matre v. Sankey (39 Am. St. Rep., 216):

"It must be admitted in the · beginning that a proceeding in adoption was wholly unknown to the common law, and in our system of jurisprudence it is purely a statutory matter. Hence it follows that in order to give any validity to such proceedings, they must have been conducted in substantial conformity with the provisions of the statute, and its requirements observed; but, notwithstanding this, it ought not to be overlooked, in the examination of cases growing out of the exercise of this statutory right, that the right is a beneficial one, both to the public and to those immediately concerned in its exercise. Since its incorporation into our system (and the fact

is, such statutes have been adopted in nearly every one of our States) the homes of many childless parents have been brightened and made happier because the law enabled them to bring into that home a child upon whom their affections could center and develop. Many an orphan child, and many a child whose parents were unable, by misfortune or their own infirmities, to care for, have, by means of this statutory right, found good homes, loving and affectionate parents, and thereby grown up to be good and valuable members of society, when otherwise they would have spent their early years in ignorance and vice, and in such surroundings grown up to young manhood or young womanhood simply to swell the overflowing ranks of the vicious and criminal classes of society; and hence it seems to me that in cases of this kind it is not the duty of the court to bring the judicial microscope to bear upon the case, in order that every slight defect might be enlarged and magnified, so that a reason might be found for declaring invalid an act consummated years before, but rather approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute."

. We find the view here expressed supported by the opinion of the Supreme Court of Alabama in Abney v. DeLoach (4 So. Rep., 757). The statute under discussion in that case provided that the act of adoption should be filed and recorded in the minutes of the Probate Court. The language is much more imperative than that of our own statute. The act of adoption in question was recorded in a book kept for recording deeds and wills. Clearly such record, as a compliance with the statute, was no record at all and in the discussion of the case it is so treated. The court, however, holds that the adoption was effective; that the neglect of the Probate Judge to do his duty by properly recording the paper would not operate to destroy its legal validity, when the maker and beneficiary had done all that the law required them to do, and which they possibly could do, towards perfecting it. We think the reasoning of the court, in that case, applies forcibly to the present case.

Our conclusion is that the act of adoption of Charles Guy Knight A. B. Hooks was only required to be filed for record by Hooks, after its proper execution as prescribed by article 1 of the statute, and that the failure of the clerk to record it did not invalidate it.

As to the second proposition under the first, second and third assignments of error: Tebbs testified that Hooks delivered the instrument to the county clerk in his office. He further testified that he told the clerk not to record it until he directed him to do so. The jury found that this latter statement was not true. It does not follow that they did not credit the first statement. If Hooks did not give it to the clerk in his office, but handed it to him elsewhere, it is clearly established by the evidence that it was in fact immediately afterwards deposited in the clerk's office. If a paper is handed to the clerk elsewhere than in his office to be filed in his office for record and is then taken by him to his office and filed there, from the time of such actual deposit and filing in his office

it must be considered as deposited there for record as required by law. (Withrow v. Citizens Bank, 55 Kansas, 378.)

What has been said disposes also of the fourth assignment of error, which is overruled.

Under the authority of Rogers v. Pettus. (80 Texas, 428), and Eastham v. Hunter (98 Texas, 560), the fifth assignment of error is overruled. Hooks paid Mrs. Taylor $150, at least, for the land. This must be taken as a satisfactory price for the entire tract. There is no evidence that it was not in fact its full value at that time. He did not pay this price for the four-seventh interest which remained in his vendor irrespective of the unrecorded deed to Richardson, but for the whole. We do not think the fact that he, at all events, recognizing the deed to Richardson for three-sevenths, got a good title to four-sevenths, which may have been worth as much as he paid for the whole, would take the case out of the rule announced in the cases cited. Both of the parties to the transaction were dead. After the lapse of years the very great difficulty of proving actual lack of knowledge by Hooks of the unrecorded deed should have some weight. We fully recognize that the burden was upon appellee to show want of knowledge of the unrecorded deed on the part of Hooks.

There was no error in refusing the instruction referred to in the sixth assignment of error. Whether or not Hooks instructed the clerk not to record the instrument of adoption had no bearing upon the question of notice to appellant of appellee's claim. Such instruction on the part of Hooks would have been fatal to appellee's claim, and the jury were so instructed by the court and were told that if Hooks, when he delivered the instrument to the clerk, instructed him not to record it, to find for defendant. This charge was given upon the correct theory that filing the instrument for record by Hooks was essential to its execution. Under this charge they found that no such instruction was given. We must assume that they would have made the same finding if the issue had been presented to them as a matter of notice, as in the charge requested. The charge could not have been justified on any other theory than that the purpose of such filing for record was to give notice. If this be true, then it follows logically, from the finding of the jury that the instrument was properly deposited with the clerk for record, that, under article 4642, Revised Statutes, it must be considered as recorded from that time, a conclusion against which appellant strenuously contends. We have not found it necessary to decide whether this contention is correct.

The proper execution of the instrument established the status of appellee as the adopted child and one of the legal heirs of Hooks, and of this status appellant was bound to take notice, as though he were an actual instead of an adopted child. This must be true unless the purpose of the filing and record was to give notice, and if this be so it comes under the general provisions of the registration laws and the filing for record operated as such notice. In this latter view the charge of the court that the filing *with instruction not to record* rendered the act of adoption void *inter sese* was more favorable to appellant than the instruction requested. This also disposes of the eighth assignment of error.

If we are to disregard the plain unqualified statement in the statement of facts that "plaintiff introduced in evidence a power of attorney from Tom Moore to John W. Leonard authorizing him to sell and convey by general warranty deed the land in controversy," and assume that this evidence having been excluded, which is nowhere shown by the record, but appears incidentally from the charge of the court, plaintiff undertook to establish the execution of this instrument by secondary evidence, the evidence was sufficient to prove the execution of the power of attorney and that the deed executed by Leonard to Murphy Taylor in his own name, although not referring to the power of attorney, was in fact executed under it and in pursuance of its authority. Leonard is shown to have had no interest in the land. In such case the deed will be referred to the authority under which it was made and will suffice to convey the title of the grantor in the power of attorney. (Hill v. Conrad, 91 Texas, 341; see also Rye v. Guffey Co., 95 S. W. Rep., 627, in which this power of attorney was under discussion.) The deed of Leonard under the power of attorney, even if the latter did not authorize him to make a warranty deed, passed the after acquired title of Moore by estoppel. (Lindsay v. Freeman, 83 Texas, 263.)

We are inclined to think, however, that we must look to the unqualified statement in the statement of facts for the evidence, upon which appellee insists in his brief, and that shows, as we have said, that the power of attorney authorizing the agent to sell and execute warranty deed was itself introduced in evidence, and without objection.

What has been heretofore said disposes of the question raised by the tenth assignment of error, which is overruled.

One of the links in the Hooks title was a deed from E. B. Harper to D. D. Moore. Appellee undertook to establish the execution of this deed by circumstances, among them nonclaim by Harper or his heirs after its alleged execution, and acts of ownership under claim of title by the owners under the Harper deed. Leonard, the holder of a power of attorney from Moore, who claimed title under the Harper deed, testified, and his testimony is not contradicted, that Tom Moore, when he gave him the power of attorney, showed him and he examined, a power of attorney and a subsequent deed from Harper to D. D. Moore, his father, both of which were acknowledged for record, and both covering the land in controversy. As tending to show claim of title under the Harper deed by Murphy Taylor, to whom Leonard conveyed the land under the power of attorney, appellee offered the testimony of Pedigo and Roberts as to the general reputation in the neighborhood that the land in controversy was Murphy Taylor's land, to which appellant objected, which being overruled, exception was taken. This testimony was also explanatory of the nonclaim on the part of Harper or his heirs. If Harper had not executed the deed in question such general reputation that the land belonged to another called upon him or his heirs after him, to assert their claim, and lends emphasis to their failure to do so, as a circumstance tending to establish the execution of the alleged lost deed. Where it is sought to establish the execution

of a lost deed by circumstances, it is admissible to prove, as circumstance tending to prove the main fact, that there have been sales and resales of the land under such title and claim of ownership by such vendees. The general reputation in the neighborhood that the land belonged to Taylor, necessarily involved the fact that Taylor asserted his ownership openly and notoriously, and this, coupled with testimony of witnesses living in the neighborhood that Taylor claimed to own the land and offered to sell it, and that the witnesses had never heard of any claim asserted by the heirs of Harper, was all admissible to show claim of title under the alleged lost deed and nonclaim by those persons who would have been the owners, if such deed had not been executed; both pregnant circumstances to show that the deed had been in fact executed. Assignments of error from eleven to sixteen inclusive presenting these questions are overruled.

The evidence referred to in the seventeenth and eighteenth assignments of error was admissible, if for no other purpose, to contradict the testimony of Tebbs that Hooks instructed the clerk not to record the deed of adoption. This evidence showed that Hooks intended to adopt appellee and thought that he had done everything necessary to that end. Besides, the act of adoption was incontrovertibly established by the instrument itself, duly executed, and the admission of the evidence, if erroneous, was harmless.

The testimony referred to in the nineteenth assignment was of a purely negative character and could not in any way have affected the verdict. We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.