**PRICE et al. v. HUMBLE OIL & REFINING CO. et al.**

**No. 12960.**

Court of Civil Appeals of Texas. Dallas.

May 2, 1941.

Rehearing Denied June 20, 1941.

A. A. White, of Tyler, Phil B. Foster, of Del Rio, H. C. Geddie and West & Stanford, all of Canton, and Morriss & Morriss, of San Antonio, for appellants.

R. E. Seagler, Joe S. Brown, John Broughton, D. H. Gregg, E. E. Townes, and John E. Green, all of Houston, Bromberg, Leftwich, Carrington & Gowan, George Schmucker, and John Miller, all of Dallas, Weeks, Hankerson & Potter and Russell Surles, all of Tyler, Joe Estes, of Fort Worth, J. M. Deavenport, of Kilgore, Angus G. Wynne, of Longview, and Wynne & Wynne, B. J. Wynne, and Gordon R. Wynne, all of Wills Point, for appellees.

YOUNG, Justice.

Appellants, as plaintiffs in the trial court, instituted this action in trespass to try title, seeking recovery of 200 acres of land out of the Walling Survey in Van Zandt County, and claiming as heirs of C. H. Gilchrist.

The common source was R. W. Berry, and defendants (aside from the heirs of Berry) claimed under record title originating in a deed from Thomas Duke to a James Berry, of date February 6, 1860, seasonably filed in Rusk County, with certified copy thereof placed in the Van Zandt County records after filing of suit. The property in issue was part of a 2,900-acre tract conveyed by Richard Walling and wife to R. W. Berry, October 19, 1857; and between said date and November 12, 1862, Berry, as grantor, in seven deeds, conveyed to various vendees all the land previously acquired from Walling, save as to this 200 acres, no deed thereto ever appearing out of Berry to anyone. At time of trial, well over 500 persons, either as plaintiffs, cross plaintiffs, or interveners, laid claim to the acreage as heirs of C. H. Gilchrist; comprehending seven distinct groups, each denying the kinship of all rival claimants. Appellants, herein referred to as the "Early Gilchrist Price group," contended and offered proof by legend and family history that C. H. Gilchrist was the eldest son, by the second wife, of Gilbert Scotland Gilchrist, of Alabama; and that he came to Texas in the early fifties, settling near the town of Tyler. A great portion of the testimony is devoted to proof indicating that appellants were the true heirs of this common ancestor. However, their claim to the land is based on circumstantial evidence, equally voluminous, tending to show that R. W. Berry, at some

date between October 19, 1857, and the spring of 1861, had executed and delivered to said C. H. Gilchrist a deed to the 200 acres, which was never recorded, but lost. Defendants in said cause are: (a) Sanger Bros. and its successor, Sanger Investment Company, claiming fee simple title under regular chain from the Thomas Duke deed of 1860; (b) Humble Oil & Refining Company and Gulf Oil Corporation, owners of a leasehold estate in the west 100 acres, from Sanger Investment Company; (c) W. F. Bridewell, et al., holding similar leasehold from the Sangers to the east 100 acres; (d) the heirs of R. W. Berry and wife, Mahulda, were defendants, having previously filed suit for the land, claiming against Sangers and their assigns; (e) Gibb Gilchrist was made a defendant, as he had theretofore refused to join in appellants' claims.

Additional to title claims, the various groups of heirs prayed for accounting of oil produced, and damages for alleged illegal possession, in the sum of $2,000,000. Defendant fee holder and each of the leaseholders answered by pleas of not guilty; also five and ten-year statute of limitations, Vernon's Ann.Civ.St. arts. 5509, 5510, and improvements in good faith. They asserted ownership through regular chain of title from 1860, as already mentioned, together with payment of taxes from date of the Duke deed; and use, occupancy, adverse and continuous possession and enjoyment, beginning with the year 1918; that the land was then fenced by Tom Howell, under contract with Sanger Bros., and thereafter continuously devoted by such individual to the purpose for which it was reasonably adapted; maintaining the fencing thereon until 1929, when oil was discovered in that vicinity.

Defendants, Humble and Gulf, also pleaded the five and ten-year statute of limitations under their oil and gas leases, together with payment of taxes and continuous production of oil; all defendant leaseholders pleading a development of their properties for oil, and improvements made in good faith.

At the close of testimony on behalf of plaintiffs (the Early Gilchrist Price group), all other groups refused to proceed under instructions of the court, whereupon the jury was instructed to find against them, with no exception taken by said parties. The only issue then remaining, so far as heirship was concerned, was whether the

Early Price claimants (appellants) were heirs of C. H. Gilchrist, and whether the latter was the son of Gilbert Scotland Gilchrist.

On February 8, 1939, after several weeks' trial, the jury made, in substance, the following findings: That R. W. Berry did not execute a deed to C. H. Gilchrist; (2) that C. H. Gilchrist was not a son of Gilbert Scotland Gilchrist (from whom appellants claimed their ancestry); (3) that the Early Price group were not the heirs of C. H. Gilchrist; (4) that appellants and their attorneys were negligent after their suit was filed on December 23, 1935, in failing to have process issued until March 23, 1936; (5) that Sanger Investment Company had peaceable, continuous and adverse possession of the tract of land in controversy, using and enjoying the same and paying all taxes thereon, and claiming the same under a deed, or deeds, duly registered, continuously using the same as a pasture for grazing purposes for a period of five consecutive years before the commencement of this suit. (6) That Sanger Investment Company, after the land was fenced in the fall of 1918, and prior to the commencement of the suit herein, held peaceable and adverse possession of the land in controversy, under fence, using the same as a pasture for grazing purposes for a period of ten consecutive years. (7) That the Humble Oil & Refining Company and the Gulf Oil Corporation, by their agents and employes, had held peaceable and adverse possession of the west 100 acres of the land in controversy, using and enjoying the same by drilling, operating and producing oil and gas from said property, and paying all taxes thereon, claiming ownership under an oil and gas lease, and assignments thereof, duly registered, for a period of five consecutive years prior to the commencement of this suit. (8) That W. F. Bridewell, et al., had, in good faith, improved the north 44 acres of the east 100 acres. (9) That W. F. Bridewell, et al., had, in good faith, improved and developed the south 50 acres of the east 100 acres. (10) That the Humble Oil & Refining Company and the Gulf Oil Corporation had, in good faith, developed the west 100 acres.

Upon these jury answers and facts found by the court, judgment was rendered against plaintiffs, cross plaintiffs and interveners, and in behalf of all defendants.

No adjudication was made as between Sanger Investment Company and those holding under it, and the heirs of R. W. Berry. Here, it should be noted that the only complaining parties to this appeal are the Early Gilchrist Price group of heirs; with the Sanger Investment Company, its leasehold assigns, and the R. W. Berry heirs as the only appellees.

The statement of facts embraces some 2,300 pages of testimony; supplemented by more than 260 exhibits, either copied, photostated, or brought up in original form.

Appellants' assignments and propositions are numerous and of varied length. Inasmuch as the jury verdict on all ten issues was favorable to appellees, other than the Berry heirs, the major challenge thereto is, that such findings of fact are contrary to the evidence and against the latter's overwhelming weight. Other errors presented involve many rulings on testimony, both in exclusion and admission; on motions, both in overruling and sustaining; errors assigned to the court's charge; arguments of adverse counsel; and prohibited kinship of a juror to some of the parties, i.e., the Berry heirs.

At the outset, we are faced with the dual problem, not only of giving utmost consideration to all points brought to issue by the briefs, but of confining our conclusions thereon to reasonable bounds. It is obvious that jury finding No. 1 (of no deed from Berry to Gilchrist) and No. 5 (of five-year limitation title in Sanger Bros.), if supported by evidence, are each determinative of this appeal, unless neutralized by appellants' assignments on procedural errors, later to be considered. Our discussion of the entire case can be materially shortened, therefore, if we may first examine appellants' series of propositions, arguing that the overwhelming weight of testimony proved the execution of a deed from Berry to their common ancestor; and defendants offering no evidence contradictory thereof, that a jury verdict supported by no probative facts or circumstances, should be set aside. On the other hand, Sanger and its assigns show that, under the whole record, presumption of deed from Berry to Gilchrist was not raised; but if in error here, that the jury finding of no deed, based on sufficient defensive testimony, is final. This leads to a digest of material facts relied on by the respective parties.

808

All that part of the John Walling League, except five tracts theretofore partitioned to the Walling heirs, which tracts lie in connecting rectangles on the northeast part of the League, was conveyed to R. W. Berry on October 19, 1857, by deed, duly recorded. From July 16, 1858, to November 12, 1862, said Berry executed seven deeds to various parcels of this land, and to various grantees, conveying all but 200 acres, six of which deeds were recorded in Van Zandt County, the seventh, to Joseph Swain, in Smith County (edge of League being in Smith). These deeds were: Berry and wife to Alexander, 700 acres, July 16, 1858; filed same day; to Stewart, 400 acres, December 28, 1858, filed December 30, 1858; to Stewart, 63 acres, February 14, 1859, filed February 24, 1859; to Hugh Berry, 160 acres, February 14, 1859, filed April 14, 1859; Berry and wife to Asa Holt, 711.5 acres, February 14, 1859, filed May 9, 1859; Berry to Joseph Swain, 198.8 acres, July 2, 1860, acknowledged same day; Berry to E. Tunnell, 476 acres, November 12, 1862, filed same day. The Berry-Asa Holt deed calls in field notes for the west boundary line of the E. Tunnell tract, and along same to the latter's northwest corner; the call then reading:

"Thence east with the North Boundary Line of said Tunnell Survey at 149 vrs., the S. W. Corner of a 200 acre division made from R. W. Berry to C. H. Gilchrist from which a Postoak 30 in. dia. brs. S.E. 2.3 Postoak 18 in. dia. brs. N. 40 W. vrs.;

"Thence N. with the W. B. of the same at 70 vrs. the Southeast corner of the 700 acre survey made from R. W. Berry to N. F. Alexander."

The Berry-Tunnell deed to land just south of the 200 acres in controversy, in its beginning call and that of the north line, reads:

"Beginning at the S. E. corner of the 200 acre division made from the said R. W. Berry to C. H. Gilchrist at a stake from which a Postoak 14 in. dia. brs. S. 72 E. 11 vrs. a R. Oak 10 in. dia. brs. N. 78 W. 4/10 vrs.;

"Thence West 1590 vrs. to a stake from which a Postoak 17 in. dia. brs. South 10 vs. a Postoak 18 in. dia. brs. South 10 vs. a Postoak 18 in. dia. brs. S. 8 deg. 4 14 vs."

In all deeds except the first (to Alexander), grantor Berry, referring to adjoining tracts, uses the term "division" or divided off," or "division survey," made from him to another. For instance, in his deed to Hugh Berry, February 14, 1859 (the Swain deed being dated July 2, 1860), Berry recites "a division survey * * * made for Joseph Swain * * * S. B. Line of 472 acre division survey made for E. Tunnell"; several times alluding to Tunnell's division, deeded in 1862. Having made these conveyances, Berry moved to an adjacent section of the county, where he lived until his death in 1886, or shortly thereafter. There is no record of any deed conveying the 200 acres in suit to anyone; nor any direct evidence that such an instrument was ever executed; that is, by one who had ever seen it, read, or acknowledged it. There was evidence that C. H. (Charner) Gilchrist, appellants' claimed ancestor, and alleged grantee in the missing deed to this 200 acres, came to Texas about 1853, and resided for some years in the neighborhood of the Smith-Van Zandt County line; that in the spring of 1861, when some thirty-six years of age, he joined the Confederate Army at Tyler, and was killed in battle, May, 1864. As part of plaintiffs' case, there was testimony from numerous witnesses that, from Civil War days, the tract lay idle and unoccupied, with no one in actual possession; wood and timber being taken therefrom occasionally by the general public, until the fall of 1918, when it was fenced. Likewise, elderly witnesses, of long residence around the tract, stated that from the same early date until fenced, the land, by common repute, was known as belonging to C. H. (Charner) Gilchrist, whose deed from R. W. Berry, he had left with a sweetheart in that locality before going to war, in the course of which he was killed.

Further testimony was that Berry never rendered any of the land purchased from Walling for taxes after 1859; and that, after making the above deeds and moving away, he asserted no character of ownership to the 200 acres. A Rev. Childress, for plaintiffs, testified that J. W. Berry, now deceased, a son of R. W. Berry, had told him about the year 1900 that his father had conveyed the tract to C. H. Gilchrist; but this evidence, along with an affidavit of two sons of Berry, made in 1913, that their parents had sold all the Walling land owned by them, was limited by the court to the title claims of the Berry heirs. John Blankenship, 94 years old when his deposi-

tion was taken, swore that he was a comrade of Charner H. Gilchrist in the army until the latter's death; that deceased told the witness of owning land in Texas, where he lived. Several claimants also stated in evidence that they had seen and read old letters in the custody of C. H. Gilchrist's mother, reputed to be from said son, which spoke of land the writer owned in Texas; and J. M. Broughton, born in September, 1854, testified in person that he had made a trip to Van Zandt County from Alabama with his father, by way of Galveston, in the spring of 1861; that, with his father, this witness had gone to some land where C. H. Gilchrist was chopping logs and clearing; of having heard Gilchrist declare such tract to be 200 acres, deeded from Mr. Berry; that he had bought and paid for it, digging a well in part payment; that witness had seen Gilchrist on the land several times over a period of about six weeks. The property was not identified by Broughton, either in shape or location, except that it adjoined other lands of Berry.

Concerning the lost deed, several witnesses testified as to search therefor in Van Zandt and adjoining county deed records; among close heirs in Texas and other states; search in other places, such as the U.D.C. records at Tyler, and in a family trunk belonging to the mother, Mary Currie Gilchrist.

The record title of Sanger Bros. begins with the Duke deed already mentioned, viz:

A certificate from the State Comptroller was introduced by defendants, showing assessments for taxation of 200 acres of the J. Walling Survey, Van Zandt County, over years 1859 to 1892, inclusive. Such records show the acreage as assessed to Thomas H. Duke in 1859, Jas. Berry in 1860 and '61; F. M. McClure in 1862; William Steadham in 1863-4; but no assessment was made of same in 1865-6; assessed again to Steadham in 1867; to no one in 1868; again to Steadham in 1869. From 1870-5, inclusive, no assessment was made in any of the names listed in the certificate. From 1876 to 1892, inclusive, it was assessed to Williams & Bonner each year except 1881 and '83. The Van Zandt County Tax Assessor-Collector certified that 200 acres out of this survey were assessed to Williams & Bonner, or the Tyler Bldg. & Loan Ass'n each year from 1884 to1918, inclusive, save in two or three instances when it was assessed to John Durst or C. B. Epes, and in one or two years when it might have been carried on the unrendered rolls. A further certificate from the records of the State Comptroller shows payment of taxes on the 200 acres by Thomas H. Duke in 1860; James Berry in 1861; by Amory R. Starr, Agent, in 1877; that the taxes were paid for the years 1879 to 1892, inclusive by Williams & Bonner, except for 1887-89-90-91, as to which years, the report of taxes was missing. Tax laws of 1850 were introduced, whereby a person claiming property

| Grantor | Grantee | Dated | Recorded |
|---|---|---|---|
| Thomas Duke | James Berry | Feb. 6, 1860 | Mar. 16, 1860. |
| James Berry | F. M. McClure | May 9, 1862 | Feb. 12, 1877. |
| F. M. McClure | William Steadham | Nov. 11, 1862 | Jan. 20, 1863. |
| William Steadham | Nathan G. Bagley | May 3, 1872 | June 2, 1915. |
| Nathan G. Bagley | Williams & Bonner, a partnership, E. C. Williams and T. R. Bonner | Jan. 15, 1873 | June 2, 1915. |
| C. T. Bonner and Mary D. Bonner, Executors of Estate T. R. Bonner | Tyler Bldg. & Loan Ass'n. | Apr. 18, 1892 | June 2, 1915. |
| E. C. Williams | John Durst | Mar. 15, 1896 | Apr. 17, 1896. |
| John Durst | C. B. Epes | Aug. 1, 1896 | Dec. 1, 1896. |
| C. B. Epes | Tyler Bldg. & Loan Ass'n. | Nov. 15, 1898 | Jan. 25, 1899. |
| Geo. H. Davidson, et al. | Tyler Bldg. & Loan Ass'n. | Feb. 8, 1900 | Nov. 10, 1902. |
| Geo. H. Davidson, et al. | Tyler Bldg. & Loan Ass'n. | Feb. 8, 1900 Recorded | June 3, 1915. |
| Tyler Bldg. & Loan Ass'n. | Alex Sanger et al. | May 24, 1918 | May 31, 1918. |

situated in any county other than that of his residence, was authorized to render same for taxes in the county where he resided. Another certificate of the Comptroller discloses that in 1859, Thomas H. Duke rendered for taxes in Rusk County, 200 acres of the Walling League located in Van Zandt County; and that, from 1858 to 1862, many of the Berry-Walling League grantees, for one or more years, rendered their land in counties other than Van Zandt. No testimony was adduced, indicating that C. H. Gilchrist, at any time, ever rendered land for taxation in Van Zandt County; the Comptroller's records showing no assessment against him for the years 1855 to 1865 on land in Smith County, or assessed in Smith County, but situated in other counties; though they do show an assessment against C. Gilchrist for a poll tax in 1857, and against C. H. Gilchrist in 1860. From 1918 to date of filing suit, all taxes were regularly paid by Sanger Bros., or those claiming under them, except for an occasional lapse by the fee owner. However, for consecutive years, 1921 to 1925, inclusive, all school taxes were paid on the land before delinquency; and from 1919 to 1925, inclusive, the same regular payments appear as to State and county taxes.

■ That proof of lost deed may be effectuated through purely circumstantial evidence is well settled. The instant case differs from the usual form of action, in that, the claims of the last record owner or his heirs are not being adjudicated; the issues here involving rival claimants from R. W. Berry; i. e., of whether the missing deed was executed to appellants' ancestor, or to another, thereby initiating Sanger's title. The non-claim by the common source, Berry, after 1862, to the entire 2,900 acres, indicated a conveyance to someone; and appellants contend that a prima facie case is made, establishing a deed, from the following circumstances: (1) Recitals in Berry's two deeds, of having divided off the acreage to Gilchrist; (2) declaration to Rev. Childress from J. W. Berry, the son, in 1900, that his father had conveyed to Gilchrist; (3) the recorded affidavit of Berry's two sons (J. W. and S. B.) that their father had conveyed all his land in the League; (4) non-claim by R. W. Berry during his lifetime; (5) of common repute in the neighborhood that the land belonged to Gilchrist, including no claim by way of actual possession by anyone until 1918; (6) statements of Gilchrist while purport-

edly on the 200 acres in the spring of 1861, that he had a deed to same from Berry; (7) statements in letters to his mother, and verbally to a soldier comrade, that he owned land in Texas.

■ By each and all of the above methods of proof, appellants argue, not that these enumerated circumstances presume a deed to Gilchrist, but that they establish actual execution and delivery of a deed to him. The elements of a prima facie case involving the presumption of a grant or ancient deed are stated in Magee v. Paul, 110 Tex. 470, 221 S.W. 254, 256: " * * * the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim. The rule is essential to the ascertainment of the very truth of ancient transactions." Also, to the same effect, is Masterson v. Harris County, etc., Dist., Tex.Com.App. 15 S.W.2d 1011, 67 A.L.R. 1324.

■ Plaintiffs below rather inconsistently argue that the above rule applies in full measure to the title claims of defendants, but not to the case made by these heirs; asserting that "Proof of deed by circumstantial evidence is not the same as proof by presumption. Neither is long-continued possession requisite to proof of lost deed." The statement is correct only when seeking to prove a lost muniment by testimony of one who has positive knowledge of the instrument's execution; such as having prepared, read, signed or acknowledged it; but, in the matter of ancient transactions, the parties thereto being dead and no direct evidence available, the authorities draw no distinction between proof of deed by circumstantial evidence and proof of circumstances from which the execution of the ancient instrument may be presumed; Surghenor v. Ducey, Tex.Civ. App., 139 S.W. 22; Le Blanc v. Jackson, Tex.Civ.App., 161 S.W. 60; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 819; Miller-Vidor Lumber Co. v. Schreiber, Tex.Civ.App., 298 S.W. 154; Masterson v. Harris County, etc., Dist., supra; and certainly, so far as this record is concerned, the method of proof was the same. Thus it appears that where, as here, the issue involves a lost deed, with no direct witnesses to its execution, the proof must

comprehend circumstances, showing a long-asserted and open claim, either by possession or other acts of domination and control, adverse to that of the apparent owner; and additional thereto, the latter's non-claim and acquiescence. These elements are essential to show a transmutation of title, and "to the ascertainment of the very truth of ancient transactions." Magee v. Paul, supra. That C. H. Gilchrist was seen two or three times during the spring of 1861, chopping wood or timber on the land, cannot be construed as long continued occupancy; and the so-called constructive possession by this Confederate soldier until his death, together with its lying idle for more than fifty years thereafter, form an insufficient predicate for proof by neighborhood reputation that the land was his.

█ General repute as to ownership is acquired through the notorious assertion of title just mentioned, and is properly admissible in such connection; tending to show presumption of deed and acquiescence of the apparent owner. Citations from appellants' brief, we think, support the doctrine; Guffey Petroleum Co. v. Hooks, 47 Tex.Civ.App. 560, 106 S.W. 690; Masterson v. Harris County, etc., Dist., supra; Chapman v. Kellogg, Tex.Com.App. 252 S. W. 151; Miller-Vidor Lumber Co. v. Schreiber, writ refused, supra.

A further natural inquiry concerns the probative force of the calls in the Holt-Tunnell deeds of a "200-acre division made from R. W. Berry to C. H. Gilchrist"; and whether appellants' aforesaid methods of proof, taken together, can be considered as an effective substitute for long continued possession, or similar notorious assertion of domination and control. No positive reference to a conveyance is shown by the ancient recitals just quoted. They become then merely cogent and relevant circumstances, tending to prove the ultimate issue. Magee v. Paul; Masterson v. Harris County, etc., Dist., supra; and answering generally our immediate query, we cite the rule applied in Simmons v. Hewitt, Tex. Civ.App., 87 S.W. 188, 189, writ refused. There, the existence and contents of lost deeds were proved by circumstances; all parties to the transactions having died, and no witness adduced who had ever seen them. The following excerpt from the opinion is very pertinent: "Appellant further contends, however, that the existence of a deed can never be taken as established by circumstantial evidence alone, in the absence of proof of some sort of possession, and that in this case proof of possession of some of the subdivisions included in the asserted deed will not be extended by construction to other distinct subdivisions not included in that possession. We cannot indorse the proposition. While it is true that the courts require an assertion of ownership coupled with some sort of possession, the principle is not analogous to possession under limitation. The idea is that there must be a distinct assertion of ownership under the alleged deed, to show that the party asserting its existence acted under it in a substantial and open way, and one which, if unauthorized, would, in the nature of things, have provoked a protest from the owner. It was therefore enough to show, in addition to the other circumstances, that the defendant took possession of part of the land included in the conveyance, and asserted ownership of the whole in himself. But if this view is not sound, there is another answer to appellants' contention. In the partition between Hall and Jones, the tract bought from the state was divided into sections 1 and 2, the state subdivisions being ignored. It therefore follows that, as between Jones and Sydnor, the latter, in taking possession of a part of the tract assigned to Jones in the partition, asserting title to the whole under an instrument which, if established, was a conveyance of the whole, thereby satisfied the requirements of the rule requiring proof of possession and assertion of ownership as a necessary element of the proof requisite to the establishment of a deed by circumstantial evidence."

█ It would thus appear that appellants' quantum of proof was insufficient to raise the issue of an ancient and lost deed; but that, on the contrary, it was appellees' defensive proof that satisfied the rule, had the burden of title been laid upon them.

█ If we be mistaken in the foregoing conclusions of law, appellants' propositions attacking the jury's verdict under issue No. 1, of no deed from Berry to Gilchrist, have been thoroughly examined. Of course, in doing so, all evidence in favor of the findings must be accepted as true, and opposing evidence disregarded. Likewise, it has long been held that an issue raising proof of deed by circumstances, or by presumptive evidence, involves presumptions of fact, and is for the jury. Herndon v. Vick, 89 Tex. 469, 35 S.W. 141. The record reflects many facts and circumstances

812

from which a jury could reasonably conclude that probably no conveyance to Gilchrist was ever made. As circumstances that repel plaintiffs' particular hypothesis, the jury could have considered, among other facts, the following: Commencement of the adverse title in 1860 (Duke deed), with tax rendition of 200 acres, Walling League, Van Zandt County, by him and his vendees; continuous payment of taxes by them; the many conveyances of title by mesne owners up to Sanger, with assertion of every indicia of ownership short of actual possession, for more than seventy-five years; the Comptroller's negative record as to land owned by Gilchrist; no search for such deed at the source of its last custody; that Berry's acquiescence could have been produced by the Duke chain of title; and that, in other deeds from Berry, the terms "division" or "division survey" were used (notably to Tunnell and Swain) before deeds to such grantees were executed, from which could be inferred a preliminary blocking off of the whole tract to individuals in transactions not then consummated. All these circumstances, inferences, and facts have probative force, and by them, appellants' circumstantial evidence tending to establish a deed, was repelled. Taylor v. Watkins, 26 Tex. 688.

The land was fenced in October, 1918, by Tom Howell, as he testified, for Sanger Bros., and he became their chief witness on the fifth issue (five years' statute of limitations). His testimony is assailed at length as being wholly insufficient to sustain the finding; pointing out particular deficiencies and contradictions therein, and emphasizing statements of Howell that he used the land for a pasture until 1926; whereas, another admitted event fixed such time as 1921. The evidence of this witness was in person, from a 1931 deposition, also as given in an old case between some of the appellees. From careful reading, apparent conflicts and inconsistencies necessarily exist. This is not an unusual result of successive examinations over time intervals; and might naturally follow the severe and extended cross examination experienced by this witness. Howell's testimony alone justified the Sanger primary issue on adverse possession.

The tract had no improvements, was well-timbered, and Howell had not attempted to clear or make it available for cultivation during the years 1918 to 1926. It having been put to no use other than grazing or pasture at least during a number of those years, and not available for cultivation until cleared, the court properly directed the jury inquiry on adverse possession to the grazing use. As to what constitutes exclusive possessory acts necessarily depends upon the nature and character of the property involved, under the familiar rule of adaptability. " * * * that in determining what will amount to an actual possession of land considerable importance must be attached to its nature, and the uses to which it can be applied, or to which the claimant may choose to apply it. What is adverse possession is one thing in a populous country, another thing in a sparsely settled one, and still a different thing in a town or village." 1 R.C.L. 694. Billingsley v. Houston Oil Co., Tex.Civ. App., 182 S.W. 373, reversed on other grounds, Tex.Com.App., 213 S.W. 248; Hardy v. Bumpstead, Tex.Com.App., 41 S. W.2d 226, 76 A.L.R. 1488; Nona Mills Co. v. Wright, 101 Tex. 14, 102 S.W. 1118.

Appellants' propositions 39 to 43, inclusive, complain of improper and prejudicial argument by adverse counsel. Issues 8, 9 and 10 bore on whether appellees owning leaseholds were good faith developers of their respective properties for oil, and in expending more than $100,000 in such connection. On these issues, numerous affidavits were introduced by the defense, not as to their truth, but as circumstances to indicate the knowledge, belief, and good faith of all lease owners, concerning their title, before incurring these expenditures. The affidavits, if true, established limitation title in Sanger, and, as restricted to the issues named, became admissible only because appellants had challenged the right of appellees to the improvements made. Broughton v. Humble Oil & Refining Co., Tex.Civ.App., 105 S. W.2d 480, writ refused. But it is contended that defense counsel's argument extended to the contents of such instruments, and on other issues. The objectionable remarks which followed opening argument of Paul Stanford for plaintiffs, are set forth in bills, which the court qualified, viz: " * * * The court considered the argument as made was permissible under the evidence, and also in reply to the argument that had been made by the Honorable Paul Stanford, wherein the said Paul Stanford had commented upon the affidavits, upon A. A. White's handling of the lawsuit in question, and had challenged the defendants, as follows: * * *." (The a₁-

gument of Mr. Stanford is then quoted). Under all the circumstances presented by the record, we feel there was nothing materially improper in the argument thus objected to.

■ Neither is reversible error shown in the admission by the court of two letters written in 1935 by Mrs. Nellie Lukenbill to R. E. Seagler, chief counsel of defendant Humble (certain portions of same being objected to). Appellants' bills also extend to the defense argument based on these letters, all of which bills were qualified by the court in language already quoted. Mrs. Lukenbill (plaintiff's rebuttal witness), on direct examination, had testified to facts tending generally to impeach Tom Howell, a witness for the defense; and further, to a conversation had with Mr. Seagler and an associate, back in 1930, wherein she said, the Gilchrist claims were discussed and the latter attorneys had made statements adverse to the Humble title. It is deemed unnecessary to set out these letters in full. Plaintiffs waived inspection of the first missive read to the jury, but upon examining the second, moved that certain statements in each letter be stricken, as prejudicial and inflammatory matters for consideration by the jury. The letters appear rather pointless, save as they refer to unidentified past dealings, reflecting on certain of plaintiffs' counsel, some of the Gilchrist heirs, and other representatives of interested parties. Defendants disclaimed (in rejoinder) any belief in the aspersive words relative to the particular attorneys, and whether appellants were the heirs referred to therein is not shown. Appellees contend the letters were relevant, in that they contain the first mention by this witness of any Gilchrist claims, and were offered only to contradict and discredit her prior testimony. We are not prepared to say that the court ruled erroneously from the chronology of facts set forth in these bills; appellants' counsel having at first waived objection to one letter; and the court having determined that defense discussion of both was properly in reply to plaintiffs' opening argument. Absent, facts clearly indicating that the trial court abused his discretion in rulings on jury argument, no error is shown. Emberlin v. Wichita Falls, etc., Co., Tex.Com. App., 284 S.W. 539; Garrett, et al. v. Brock, Tex.Civ.App., 144 S.W.2d 408, Syl. 3.

■ Propositions 54 and 61 assail (1) the court's instruction in limiting to the Berry heirs, an affidavit of J. W. and S. B. Berry, made in 1913, that their father had conveyed all land in the Walling League; and (2) a similar limitation on the testimony of Rev. Childress, that a son of R. W. Berry, in 1900, had told witness of the land having been conveyed by his father to C. H. Gilchrist. The sons of Berry, above named, are also dead, the eldest of whom was about 12 or 14 years old in 1862, when the last of the original seven deeds was executed; and still younger when the deed to the 200 acres was allegedly made. It is proper to note that the two items of evidence just mentioned do not purport to be positive declarations of the common grantor Berry, much less do they fix the time thereof as before he parted with all title to the League. Neither does the particular evidence disclose any peculiar means of knowledge on part of the two sons of a deed to Gilchrist. Appellants recognize the rule that, to render any admission of a former owner of property competent against his successor in title, it must be made at a time when the title was in him. Wilson v. Simpson, 80 Tex. 279, 16 S.W. 40; Snow v. Starr, 75 Tex. 411, 12 S.W. 673. They contend the evidence to be only confirmatory of the lost deed to Gilchrist; but Sangers also, in effect, claim under the same common source, rendering the statements attributed to the elder Berry a derogation of appellees' rival title under the above rule. Moreover, the declarations of these sons (themselves being deceased), made several years after the transaction is supposed to have occurred, are inadmissible unless it be first shown that the declarants had peculiar means of knowing the facts concerning which their declarations were made, and probably did know such facts. Lewis v. Bergess, 22 Tex.Civ.App. 252, 54 S.W. 609; McCormick & Ray on Evidence, § 477; 4 Enc. of Evidence, p. 94. These propositions are overruled.

■ The trial court did not err in overruling appellants' assignments and propositions attacking the qualifications of juror A. O. Hoskins, because of his kinship to some of the defendants (Berry heirs); the point being first raised in amended motion for new trial May 24, 1939; the jury verdict having been rendered February 8 previously. After an extended hearing, involving largely above

objection, the motion was overruled. The court's action in so ruling is justified, (1) because the particular question cannot be first raised after verdict; El Paso Electric Co. v. Whitenack, Tex.Com.App., 1 S.W. 2d 594, citing many cases; (2) the evidence was fully sufficient to support the court's conclusion that counsel for appellants, on voir dire examination, did not ask questions reasonably calculated to elicit the information that such juror was related to any of the defendants within the prohibited degree; Templeton v. State, Tex.Cr.App., 57 S.W. 831; Page v. State, 22 Tex.App. 551, 3 S.W. 745; Perkins v. State, 120 Tex. Cr.R. 399, 46 S.W.2d 672; (3) juror Hoskins testified that he did not know of his kinship to any of the defendants (being a cousin to three of the Berry heirs) until after the verdict was rendered. Accordingly, "His judgment could not have been affected even insensibly, by a circumstance of which he had not the slightest knowledge." Rogers v. State, 109 Tex.Cr.R. 88, 3 S.W.2d 455, 459. See Reed v. Commonwealth, 273 Ky. 607, 117 S.W.2d 589, and Annotations thereof in 116 A.L.R. 679, indicating that the holding in the Rogers case accords with the great weight of authority.

It is further charged that the court erred in permitting defendants to offer rebuttal witnesses on general reputation that the tract belonged to Sanger Bros. Though the particular testimony might have been improperly admitted, so also was appellants' like testimony on common repute, under their proof, as we have heretofore indicated and held; and "a party, on appeal, may not complain of the admission of incompetent or improper evidence where he himself has offered or brought out the same evidence or evidence of similar character". Krider v. Hempftling, Tex.Civ.App., 137 S.W.2d 83, 86.

Our views of the law relating to issue No. 1 (proof of deed by circumstances) have already been stated. Also, this issue and the 5th (five-year limitation), we have likewise concluded, rest upon evidence of probative force. Certainly this record does not demonstrate either finding to be against such an overwhelming preponderance of the testimony as to indicate the jury were influenced by improper motives; or that manifest injustice has been done, or that same are clearly wrong. Oden v. McAdams, Tex.Civ.App., 108 S.W.2d 920.

These findings being a sufficient basis for the court's rendition in favor of appellees, it is deemed unnecessary to discuss appellants' remaining assignments. It follows, from our conclusions hereinabove expressed, both of fact and of law, that this cause must be affirmed.

Affirmed.

### On Rehearing.

Appellants particularly complain, on rehearing, that we have inadequately disposed of their propositions 39 to 43, inclusive (alleged prejudicial argument). It is urged that all objectionable remarks of defense counsel be reproduced and, by express analysis, demonstrated as within the purview of District Court Rule 39, requiring counsel to confine argument strictly to evidence and to the remarks of opposing attorneys. Though in many instances it may be seen fit to set out evidence as shown by the record, yet our appellate courts are not required to do so. Nowlin v. Hall, 97 Tex. 441, 79 S.W. 806. The extreme length of the subject matter embraced in these bills is, alone, sufficient explanation for our failure to quote therefrom.

However, we have carefully reexamined the propositions, both as set forth in main briefs and in appellants' present motion, and find nothing to warrant a further detail of our conclusions on the questions raised.

Vigorous complaint is made of misuse in defensive argument of the many ex parte affidavits on limitation, properly in evidence on issues 8, 9 and 10, and admitted for the limited purpose of showing good faith of all leaseholders in drilling wells. The instruments show generally to have been procured by Sanger Bros., but Mr. Stanford, in his opening remarks, had inferred that they were made up by defendants in an effort to bolster their own title; that they were not genuine; and, if true, affiants would have been witnesses at the trial. Considering the nature of said issues, it seems to us that the implications carried in aforesaid opening remarks fairly well opened the door to all that was said in reply; nothing being argued in connection with the affidavits that the jury did not already know. Broughton v. Humble Oil & Refining Co., supra. Further, it is to be noted that issue 1 was answered adversely to appellants, and the argument under attack, even if assumed to touch improperly on other issues, had no material bearing on the principal finding of no deed. McKinney v. Watts, Tex.Civ.App., 99 S.W.2d 673, Syl. 6, 7.

We adhere to the original disposition of appellants' assignments and propositions; hence overrule their motion for rehearing.